This is a workmen's compensation case.
On November 15, 1977 Bobby Gene Catrett, an employee of Sunnyland Foods, Inc., Dothan, Alabama, injured his back as he was loading a side of beef onto a truck. He was sent to Flowers Hospital in Dothan by his employer. At the hospital Catrett was seen by three physicians. Later Catrett was referred to Dr. John Haley, an orthopedic surgeon who, in consultation with Dr. William Silvernail, performed disc surgery on June 15, 1978. Catrett was seen by Dr. Haley periodically up until June 20, 1979, the date of his last visit. *Page 1007 
Before completely leaving Dr. Haley's care, Catrett had a conversation with Arthur Jessee, an adjuster for Liberty Mutual Insurance Company, the workmen's compensation carrier for Sunnyland Foods, Inc. Catrett testified that he told Jessee that he was not satisfied with the doctors he had been referred to by Sunnyland. Catrett then said that Jessee told him to use any doctor he wanted to. This conversation was in April of 1979. Jessee admits seeing Catrett at his home on this occasion but denies giving Catrett the authority to use the doctor of his choice.
After the April meeting with Jessee, Catrett sought treatment by Dr. J.C. Serrato, Jr. of Columbus, Georgia on May 2, 1979. Dr. Serrato saw Catrett several times after the initial visit, and during the middle of July 1979 he performed an amopaque myelography on Catrett. Catrett's condition was diagnosed as reherniated discs, which is a permanent condition. Dr. Serrato stated that while surgery may ultimately be needed, other methods of treatment such as therapeutic blocks should be used before surgery. Also, Dr. Serrato stated that there was a great element of risk in the surgery, that the chances of a good result are lower with the second operation, and that he would be reluctant to operate.
From November 5, 1977 until April 24, 1979 Catrett received $107.05 per week as temporary total disability benefits under workmen's compensation. His medical bills have also been paid, except medical and hospital bills relating to Dr. Serrato's treatment. Since April 30, 1979 no temporary total benefits have been paid; however, Catrett has been paid $26.74 per week. Sunnyland also has refused to pay for the medical and hospital bills for treatment by Dr. Serrato on the ground that these expenses were not authorized by them pursuant to § 25-5-77 (b), Code of Alabama 1975, and that Catrett's right to compensation has been suspended by his refusal to use the doctor selected by Sunnyland.
It should be noted that prior to Catrett's second visit to Dr. Serrato on May 9, 1979, he telephoned the offices of Liberty Mutual Insurance Company in Columbus, Georgia to seek approval for hospital admission under the care of Dr. Serrato. Catrett was told by a representative of Liberty Mutual that the insurer would not pay for such hospital admission but that it would pay for an admission directed by Dr. Furnie Johnston of Dothan. Catrett rejected this arrangement and continued to see Dr. Serrato. Catrett also said that he understood that the insurer had refused to approve his admission to the hospital if he was to be under the care of Dr. Serrato. It was after this phone call to the insurer that Catrett entered the hospital under Dr. Serrato's care and underwent a myelogram. Catrett has refused to see any doctor other than Dr. Serrato.
On April 30, 1979 Catrett filed a complaint in Houston County seeking workmen's compensation benefits for his injury. On May 10, 1979 Sunnyland filed an answer admitting that Catrett was hurt while in the course of his employment but denying the extent of the injury. A hearing was held on October 3, 1979 and a final judgment was rendered on November 5, 1979.
The judgment contained findings of fact that Catrett was permanently and totally disabled, that Catrett was in pain and unable to work in any capacity at the present time and any rehabilitation efforts would be ineffective at the present time.
The judgment as modified ordered Sunnyland to pay Catrett $107.05 a week for the period of his disability; gave Sunnyland a credit for all temporary total disability benefits paid to Catrett from November 5, 1977 through April 24, 1979; and awarded Catrett the sum of $2,248.68, plus ten percent of this sum as a penalty for wrongfully terminating the disability benefits. The $2,248.68 represents the difference in the weekly payments of $107.05 and $26.74 for the period April 24, 1979 to November 6, 1979, i.e. the date of termination of payments to the date of judgment. The judgment as modified also required that Catrett be paid for the charges made by Dr. J.C. Serrato, Jr., all hospital and clinic charges pursuant, to treatment by Dr. Serrato, all *Page 1008 
x-ray costs pursuant to treatment by Dr. Serrato, and $300.00 to Fox Catrett, brother of the plaintiff, loaned to Catrett for payment of medical expenses.
On March 4, 1980 the trial court denied a motion for new trial made by Sunnyland and granted Catrett's motion to strike certain exhibits offered by Sunnyland in support of its motion for new trial. Sunnyland appeals from the judgment on the merits and from the denial of its motion for new trial.
The first issue presented by the appeal is whether there is any credible evidence to support the trial court's finding that Catrett is totally disabled. We hold that there was such credible evidence before the trial court.
The rule of review in workmen's compensation cases is that the fact findings made by a trial court must be upheld if those findings are supported by any legal evidence. Romine v.McDuffie, Ala.Civ.App., 341 So.2d 952 (1977). Dr. Serrato testified in his deposition, which was introduced into evidence, that Catrett was totally disabled. This evidence satisfies the rule of review in this case.
The next issue is whether the employee may select the doctor or does the employer have that prerogative. The law in Alabama gives the right to designate the treating physician or surgeon to the employer. The statute provides:
 If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and in such event the employee shall be referred to a second physician selected by the employer. If the employee is dissatisfied with the second physician selected by the employer, the employee may so advise the employer; and, in such event the employee shall be referred to a third physician selected by the employer. In the event surgery is required, if the employee is dissatisfied with the designated surgeon, he may so advise the employer, and in such event the employee shall be referred to a second surgeon selected by the employer. If the employee is dissatisfied with the second surgeon designated by the employer to perform surgery, the employee may so advise the employer; and, in such event, the employee shall be referred to a third surgeon selected by the employer.
Section 25-5-77, Code of Alabama 1975. The statute clearly gives the employer at least the first three selections of physicians or of surgeons.
The evidence shows that Catrett was referred by the employer to Dr. Haley, an orthopedic surgeon, who performed disc surgery on Catrett. Prior to being released by Dr. Haley, Catrett testified that during a conversation with Arthur Jessee, an adjuster for the insurer, Jessee told him that he could go to any doctor he wished to consult. Thereafter, Catrett selected Dr. Serrato as his doctor.
By authorizing Catrett to seek treatment from a doctor of his choice, Sunnyland[1] effectively transferred its authority to choose the doctor to Catrett; and Catrett stated that he was completely satisfied with Dr. Serrato. Thus, Sunnyland cannot contend that Catrett unreasonably refused treatment from doctors later suggested by it when Catrett was being treated by a doctor with whom he was fully satisfied after being authorized by Sunnyland to choose his own physician. No error here.
Sunnyland's next issue is that Catrett's refusal to accept medical treatment from its doctors suspends Catrett's right to workmen's compensation benefits during the period of such refusal as provided in § 25-5-77 (b), Code of Alabama 1975.
Section 25-5-77 (b) provides:
 If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical service or physical rehabilitation which the employer elects to furnish under the provisions of this chapter, his right to compensation shall be suspended and no *Page 1009 
compensation shall be payable for the period of such refusal.
Sunnyland argues that on May 9, 1979 Catrett was notified that he did not have authority to use Dr. Serrato. Catrett admits he was so notified. However, as previously noted, there is evidence in the record to support the trial court's finding that Catrett had authority to use Dr. Serrato. Nason v. Jones,278 Ala. 532, 179 So.2d 281 (1965); Romine v. McDuffie, supra.
Since Catrett had authority to use Dr. Serrato, did receive treatment from him, and was satisfied with that treatment, it cannot be said that Catrett refused medical treatment. Hence, §25-5-77 (b) would have no application.
Catrett says that in April 1979 Jessee told him to use the doctor of his choice. Thereafter in May the insurer told Catrett that he could not use the doctor of his choice. This appears to be an attempted revocation of authority delegated by Sunnyland to Catrett. While Sunnyland does not directly present this issue to us, we consider it necessary to decide the question in view of the other issues raised by appellant.
Section 25-5-77 (a), Code of Alabama 1975, dealing with selection of doctors, repeatedly provides that the employer has the right to designate at least the first three treating physicians or surgeons when the employee is dissatisfied with the employer's selection and so notifies the employer. Section25-5-77 (a) is as follows:
 If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and in such event the employee shall be referred to a second physician selected by the employer. If the employee is dissatisfied with the second physician selected by the employer, the employee may so advise the employer; and, in such event the employee shall be referred to a third physician selected by the employer. In the event surgery is required, if the employee is dissatisfied with the designated surgeon, he may so advise the employer, and in such event the employee shall be referred to a second surgeon selected by the employer. If the employee is dissatisfied with the second surgeon designated by the employer to perform surgery, the employee may so advise the employer; and, in such event, the employee shall be referred to a third surgeon selected by the employer. [Emphasis supplied.]
Since Catrett was never dissatisfied with Dr. Serrato and never informed Sunnyland of such, Sunnyland never had a right to designate another doctor. Therefore, we hold that Catrett may not be forced to leave the care of a doctor with whom he is satisfied even though the employer, i.e. Sunnyland, might have become dissatisfied with that particular doctor.
Sunnyland next contends that the trial court erred when it excluded the exhibits offered by Sunnyland in support of the motion for new trial. The exhibits were letters between the attorneys written prior to the trial in chief. The information contained in the letters dealt with Catrett's knowledge that Sunnyland would not pay for any expenses incurred for treatment by Dr. Serrato. This information was elicited at the trial in chief and is not, therefore, new evidence as is required by §12-13-11, Code of Alabama 1975, which provides:
 (a) On motion filed within 30 days from entry of judgment, a new trial may be granted for the following grounds:
. . . .
 (7) Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.
See also Morris v. Yancey, 272 Ala. 549, 132 So.2d 754 (1961). No error here.
The final issue is whether the trial court erred in holding that the temporary total disability benefits paid to Catrett entitle Sunnyland to a credit against the total permanent disability benefits awarded to Catrett.
The trial court in its decree as modified held that Sunnyland paid weekly compensation to Catrett of $107.05 from November 5, *Page 1010 
1977 to April 24, 1979 and is entitled to a credit for these payments. From November 5, 1977 to June 15, 1978 Catrett was temporarily totally disabled and from June 15, 1978 to date he was permanently totally disabled.
Sunnyland contends this award is incorrect in that Catrett was paid temporary total disability benefits from November 5, 1977 to April 24, 1979 and should be given credit for the entire period. This entire credit was given by the trial court when it added to its findings in the modification that Catrett had been paid weekly compensation from November 5, 1977 to June 15, 1978.
However, both the trial court and Sunnyland are in error. Such a credit may have been proper under § 25-5-57 (a)(3)(g), Code of Alabama 1975 if Catrett had suffered a permanent partial disability. Section 25-5-57 (a)(3)(g) provides:
 When a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3) of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of such temporary total disability shall be deducted from the number of weeks payable for such permanent partial disability. Compensation shall continue during disability, but not, however, beyond 300 weeks. [Emphasis supplied.]
However, in the case at bar the award was for total and permanent disability, not permanent partial disability, and §25-5-57 (a)(4) does not provide for a credit as does §25-5-57 (a)(3)(g). In the absence of statutory authority, no credit can be given. The trial court erred in giving a credit and this aspect of its judgment is reversed.
The trial court did properly credit Sunnyland with the amount of money it paid Catrett since April 24, 1979. Since April 24, 1979 Sunnyland has paid $26.74 a week to Catrett. This amount is $80.31 less than the amount which Catrett should have been paid. Therefore, that part of the judgment which awarded Catrett $2,248.68 was correct and is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] It is not contended by Sunnyland that Jessee was not authorized to bind Sunnyland.