Wix Corporation seeks relief from an order of the Jefferson Circuit Court awarding Stanton Austin Davis medical benefits under the Alabama Workers' Compensation Act, § 25-6-1 et seq., Ala. Code 1975, for a heart condition that allegedly arose out of Davis's employment at Wix. *Page 1042 
In September 1998, Davis sued Wix in the Jefferson Circuit Court. Davis requested that the circuit court award him workers' compensation benefits for injuries allegedly suffered at work on September 20, 1996. Davis alleged that he suffered injuries to his knee, back, and mouth after he "blacked out" and fell at work. Davis also sought benefits relating to a heart condition that he claimed was caused by his employment.
In February 2000, Davis and Wix entered into a settlement agreement regarding all of Davis's claims with the exception of his claim for the cost of medical treatment for his heart condition. As to Davis's heart condition, the settlement agreement stated:
 "In regards to medical treatment for the heart, the plaintiff agrees that he will continue to seek medical treatment from his health insurance carrier and shall submit all claims for the heart condition as long as he has health insurance. Upon termination of any health insurance where the plaintiff is no longer insured, he will then be able to seek medical treatment in regards to the heart from the employer under workers' compensation as long as said treatment is reasonable and necessary and related to the alleged September 20, 1996 injury pursuant to the Workers' Compensation Act of Alabama."
The circuit court approved the settlement agreement, and it retained jurisdiction over the question whether Davis was entitled to medical benefits for his alleged heart condition.
In February 2004, Davis filed a "Petition for Medical Relief in which he sought an order requiring Wix to pay for his "cardiovascular/cardiac care" pursuant to the terms of the Workers' Compensation Act.[1] Wix opposed Davis's petition, arguing (1) that compelling payment for Davis's cardiac care would violate the settlement agreement and (2) that Davis's heart condition was not related to his employment.
After a hearing regarding Davis's petition, the circuit court requested that the parties submit briefs. Upon receipt of the briefs, on October 19, 2004, the circuit court entered an order in which it determined that Davis no longer had health insurance as contemplated by the settlement agreement and that, pursuant to the terms of the settlement agreement, Wix was required to pay medical benefits for Davis's cardiac care.
On November 30, 2004, Wix filed a petition for a writ of mandamus with this court. On December 21, 2004, Davis filed a motion to dismiss Wix's petition on the ground that the circuit court's order was a final, appealable judgment as to which mandamus relief was not available. On February 8, 2005, this court denied that motion. Before proceeding to the merits of Wix's petition, we find it necessary to revisit the denial of Davis's motion to dismiss Wix's petition for a writ of mandamus.
"Because mandamus is an extraordinary remedy, the standard of review on a petition for a writ of mandamus is whether there is a clear showing of error on the part of the trial court."Ex parte Atlantis Dev. Co., 897 So.2d 1022, 1024
(Ala. 2004). *Page 1043 
 "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
Ex parte Integon Corp., 672 So.2d 497, 499
(Ala. 1995).
Reiterating the third element quoted above, this court stated in Ex parte Amerigas, 855 So.2d 544 (Ala.Civ.App. 2003), that "[r]eview by mandamus is not appropriate where the petitioner has another adequate remedy, such as an appeal."Id. at 546. This court further stated:
 "`"The rules of law applicable to the case are simple and well settled. The writ of mandamus will lie from a superior to an inferior or subordinate court, in a proper case, to compel it to hear and decide a controversy of which it has jurisdiction; or, where the cause has been heard, to compel such inferior court to render judgment or enter a decree in the given case. But its use is not warranted to direct what particular judgment shall be rendered in a pending cause, nor is it the proper function of such remedial writ to re-examine, or correct errors in any judgment or decree so rendered. `The rule applies to judicial as well as to ministerial acts, but it does not apply at all to a judicial act to correct an error, as where the act has been erroneously performed. If the duty is unperformed, and it be judicial in its character, the mandate will be to the judge directing him to exercise his judicial discretion or judgment, without any direction as to the manner in which it shall be done; or if it be ministerial, the mandamus will direct the specific act to be performed. Ex parte Newman, [81] U.S. 152, 14 Wall. 152, 169, 20 L.Ed. 877 [ (1871) ]; High on Extr. Rem. §§ 150-152, 266; Ex parte Schmidt, 62 Ala. 252 [ (1878) ]; Ex parte Mahone, 30 Ala. 49 [(1857)]. The principle, of course, universally prevails, that in no event will the writ ever be awarded where full and adequate relief can be had by appeal, writ of error, or otherwise."'"
Ex parte Amerigas, 855 So.2d at 547 (quotingState v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526
(1972) (quoting in turn State v. Williams,69 Ala. 311, 316 (1881))) (some emphasis original; some emphasis added). In short, "[m]andamus should not issue `"to re-examine[ ] or correct errors in a[ ] judgment."'" Exparte Amerigas, 855 So.2d at 547 (quoting State v.Cobb, 288 Ala. at 678, 264 So.2d at 526).
Citing Homes of Legend, Inc. v. O'Neal,855 So.2d 536 (Ala.Civ.App. 2003), Wix argues that the circuit court's October 2004 order fails to satisfy the requirement of finality necessary for appeal. We disagree.
In Homes of Legend, the employee filed a motion in the trial court during the pendency of his underlying claim for workers' compensation benefits; the motion sought a determination as to whether his former employer or his current employer was to be responsible for medical treatments to be received during the pendency of the litigation: "O'Neal filed a motion to compel Homes of Legend, or in the alternative, Amerigas, to pay for his medical treatment for his alleged injuries while the issue of liability was beingdecided." 855 So.2d at 537 (emphasis added). Accordingly, the resulting trial-court order with which this court was concerned in Homes of Legend was entered pending the eventual outcome of the employee's underlying workers' compensation claim. It was in *Page 1044 
this context that this court concluded that that order was not a final order from which an appeal would lie. Id.
at 537-38.
In the present case, however, all of Davis's claims for all injuries related to the events of September 20, 1996 — other than Davis's claim for medical treatment for his heart condition — were resolved by means of an agreement between the parties and a court order approving that agreement in February 2000. The only issue remaining to be resolved at the time of the entry of the circuit court's October 2004 order was the issue whether Wix was liable for medical benefits for Davis's heart condition under the Workers' Compensation Act. While the order that was the subject of the appeal in Homes of Legend was entered pending a subsequent decision on the issue of liability, the order at issue in the present case is the decision on the issue of liability. Because of this, and because there are no associated issues that remain unresolved, that order constitutes a final, appealable judgment.
Wix also cites Ex parte Brookwood Medical Center,Inc., 895 So.2d 1000 (Ala.Civ.App. 2004), and Ex parteWal-Mart Stores, Inc., 794 So.2d 1085 (Ala. 2001), in opposition to Davis's motion to dismiss Wix's petition. Wix argues that each of those cases is an example of a case in which the appellate court considered the merits of a petition for a writ of mandamus challenging a trial-court order awarding medical benefits. Those cases, however, addressed interlocutory trial-court orders entered during the pendency of litigation as to the compensability of the employees' injuries. Moreover, the issue in those cases was not the employers' liability for the employees' medical treatment. Instead, in Ex parte BrookwoodMedical Center, the employer did not, in the mandamus proceeding before this court, dispute its responsibility for paying for reasonable and necessary medical treatments pending the trial of the underlying case; rather it merely challenged how that treatment was to be provided. See Ex parteBrookwood Med. Ctr. (addressing an employer's petition for a writ of mandamus in which the employer challenged a trial-court order requiring the employer to provide a second panel of four physicians from which the employee could choose a pain-management specialist, see generally §25-5-77(a), Ala. Code 1975); and Ex parte Wal-MartStores (addressing an employer's petition for a writ of mandamus in which the employer objected to a specific surgery not recommended by the employee's current authorized treating physician).[2] Those cases, too, are therefore distinguishable from the present case.
In light of the foregoing, mandamus is not available to Wix as a mechanism for obtaining relief from the circuit court's *Page 1045 
October 2004 judgment. We note, however, that Wix's petition was filed within the 42-day time period allowed for filing a notice of appeal from the circuit court's October 2004 judgment. We therefore elect to treat Wix's petition as an appeal of that judgment, and we now proceed to consider the merits of the arguments made by the parties in their briefs to this court.
In entering its October 19, 2004, judgment, the circuit court relied upon documentary evidence submitted by the parties; no live testimony was received by the court at the hearing on Davis's petition for medical relief. Accordingly, the deference normally accorded to a trial court's findings of fact based upon the receipt of evidence ore tenus is not applicable here. Instead, this court must conduct a de novo review as to both the circuit court's findings of fact and its conclusions of law. Lepeska Leasing Corp. v. State Dep't of Revenue,395 So.2d 82, 83 (Ala.Civ.App. 1980). See AlabamaRepublican Party v. McGinley, 893 So.2d 337, 342
(Ala. 2004).
The outcome of this appeal is governed by the parties' settlement agreement, which provides, in part:
 "In regards to medical treatment for the heart, the plaintiff agrees that he will continue to seek medical treatment from his health insurance carrier and shall submit all claims for the heart condition as long as he has health insurance. Upon termination of any health insurance where the plaintiff is no longer insured, he will then be able to seek medical treatment in regards to the heart from the employer under workers' compensation as long as said treatment is reasonable and necessary and related to the alleged September 20, 1996 injury pursuant to the Workers' Compensation Act of Alabama."
(Emphasis added.)
In keeping with the parties' settlement agreement, for several years Davis sought and received care and treatment for his cardiac condition that was paid for by a health-insurance policy provided to Davis through American Health, Inc. Sometime in 2003, however, this insurance policy terminated, at which time Medicare became Davis's primary medical insurer.
The circuit court interpreted the first of the two above-emphasized passages of the settlement agreement as referring only to "private" health insurance, and not to Medicare insurance. We are not persuaded that, from its plain language, that passage can be so interpreted. Nonetheless, even if the reference to health insurance in the settlement agreement was not intended by the parties to be limited to "private" insurance, the circuit court correctly notes in its judgment that Medicare coverage is not to be available for the cost of treatments for injuries that would otherwise be covered under a state's Workers' Compensation Act. See42 U.S.C. § 1395y(b)(2)(A)(ii).
Accordingly, it might be asked whether the parties intended by their settlement agreement to remove Davis's injuries from coverage under the Workers' Compensation Act, in an effort to cause Davis to retain coverage for those injuries under his Medicare insurance. Even if this was their intent, however, we are not inclined to accept the view that the parties lawfully could contract themselves out of workers' compensation coverage so as to force Medicare coverage for an injury that, in the absence of such a contract, would in fact be covered by workers' compensation. We therefore proceed to the question whether Davis's cardiac condition is in fact one that is covered under Alabama's Workers' Compensation Act.
The second of the two passages emphasized in the above-quoted portion of *Page 1046 
the parties' settlement agreement, as incorporated in the circuit court's February 14, 2000, order, states that Davis will be entitled to coverage under the Workers' Compensation Act for reasonable and necessary medical treatments for his heart condition as long as the same is "related to the alleged September 20, 1996 injury pursuant to the Workers' Compensation Act of Alabama." (Emphasis added.) In his brief to this court, however, Davis argues that the circuit court's October 19, 2004, judgment should be upheld because the evidence supports a finding that Davis's work-relatedactivities of September 20, 1996, either caused or contributed to the cardiac condition for which he now seeks medical benefits.[3] In its briefs to this court, Wix does not treat the issue presented to be as narrow as whether theinjuries suffered by Davis as a result of his fall on September 20, 1996, in turn caused his heart condition. Instead, Wix, like Davis, treats the issue presented as whether there is substantial evidence that the physical activities in which Davis engaged on September 20, 1996, caused or contributed to his heart condition. We will therefore address both the factual issue of whether Davis's September 20, 1996, physical injuries caused or contributed to his heart condition and the factual issue of whether Davis's physicalactivities on September 20, 1996, caused or contributed to his heart condition.
Davis began his employment with Wix in 1961 as a sales representative. Thereafter, he worked for Wix on a continual basis until September 20, 1996. Davis testified that he first noticed symptoms relating to his cardiac condition in 1989 or 1990. The first symptom he noticed was dizziness that would come about when he rose to get out of a chair or out of his automobile, or when he became overheated at work or while climbing at work.
Sometime in 1990, Davis alleges that he was demoted to an "entry-level position." Davis testified that he felt stress associated with his employment following the demotion as a result of the demotion itself and as a result of the reduced pay and the sales quotas associated therewith. In 1991, Davis was referred to Dr. Jerry Chandler, a cardiologist, because of chest pain and an abnormal treadmill exercise test. Dr. Chandler performed a cardiac catheterization at that time, which showed a blockage in three of Davis's major coronary arteries. Dr. Chandler testified that, typically, he would expect arterial blockages such as those revealed by the catheterization on Davis in 1991 to grow over time. He also testified that he told Davis's referring physician at that time that Davis "was very likely to require coronary artery by-pass graft at some point in the future." Despite this prognosis, Dr. Chandler found it appropriate, and Davis elected, to pursue medical therapy rather than surgery at that time.
On September 20, 1996, Davis was working at a distributor's warehouse performing an inventory return in the course of his employment with Wix. Davis testified that he was climbing to access some lightweight filters located on a shelf some 8 to 10 feet above floor level when he began to feel *Page 1047 
dizzy, blacked out and fell, and suffered injuries to his knee, back, and mouth.
Upon admission to the hospital for treatment of the injuries to his knee, back, and mouth, Dr. Chandler's partner, Dr. John Egan, Jr., examined Davis and performed an arteriogram. This test showed that the blockage in the three arteries that had been revealed by the catheterization in 1991 had progressed and had become severe enough to warrant-bypass surgery, which subsequently was performed. Davis did not suffer a myocardial infarction, or a heart attack, during the events of September 20, 1996, and Dr. Chandler testified that the bypass Davis underwent while in the hospital being treated for his physical injuries could be considered "elective" in nature.
Davis's treating physician, Dr. Chandler, testified that "[h]ypothetically, in theory" Davis's temporary loss of consciousness and resulting fall on September 20, 1996, "could have been related to his heart." In other words, there is evidence indicating that Davis's heart condition could possibly have been a contributing cause of his fall and resulting physical injuries. This testimony, however, obviously does not amount to evidence indicating that the fall and resulting physical injuries contributed to Davis's heart condition.
Elsewhere in his deposition, Dr. Chandler testified that Davis's activity in climbing one or two steps in reaching above his head to manipulate relatively light objects on a shelf approximately eight feet off the ground would be the type of activity for which the doctor "would expect [Davis] to have a poor exercise tolerance or poor endurance . . . because of the use of the upper body." Dr. Chandler went on to opine that "if that [activity] raised [Davis's] blood pressure or caused constriction of the blood vessels which decreased blood flow to the heart, he could have become weak or short of breath or conceivably have irregular heart rhythm." When asked if this in turn could have had an effect on Davis's condition, or could have caused Davis to "briefly pass out or lose focus or conscious[ness]," Dr. Chandler answered, "possibly." Again, this is evidence indicating that Davis's heart condition "possibly" could have led to the fall and resulting physical injuries he suffered on September 20, 1996, but it is not evidence indicating that the fall and the physical injuries caused his heart condition.
Dr. Chandler also was asked whether Davis's physical activity at work, which included occasionally exerting himself through the use of his upper extremities, from 1991 through September 20, 1996, could have affected the progression of his heart condition during that five-year period. Dr. Chandler's answer to that question, although in the affirmative, does not constitute substantial evidence in support of the circuit court's judgment for a number of reasons. First, Dr. Chandler noted that he was "speak[ing] theoretically because it's difficult to prove these issues." In addition, Dr. Chandler was answering a question concerning the effect on Davis's heart condition of his physical exertion repeatedly throughout a five-year period, not a question specifically aimed at the effect of the particular exertion by Davis on September 20, 1996. As noted previously, Davis first noticed symptoms relating to his cardiac condition in 1989 or 1990, before his demotion at work and approximately six years before the activities in which he engaged on September 20, 1996. Davis's heart condition was formally diagnosed in 1991. Dr. Chandler testified that he was unable to determine when Davis's heart condition became as severe as it did. In other words, Davis has not presented evidence from which it fairly can be determined that Davis's activities on September *Page 1048 
20, 1996, caused an abrupt or significant increase in the blockage or the obstruction within Davis's coronary arteries. "It is a well established principle that evidence presented by a [workers'] compensation claimant must be more than evidence of mere possibilities that would only serve to `guess' the employer into liability." Hammons v. Roses Stores,Inc., 547 So.2d 883, 885 (Ala.Civ.App. 1989).
In light of the foregoing, we conclude that Davis has failed to establish that his cardiac condition was caused either by the injuries he suffered on September 20, 1996, or by the physical activities in which he engaged on that date. The circuit court's conclusion that Davis is entitled to coverage under the Workers' Compensation Act for the cost of medical treatment for that cardiac condition, therefore, was in error. The circuit court's judgment is reversed, and this cause is remanded to the circuit court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] Davis also sought the aid of the circuit court in enforcing its previous judgment pursuant to which Wix had been made liable for the cost of medical treatments for Davis's back injury. We note that trial courts have the inherent authority to interpret, implement, and enforce their judgments. Helmsv. Helms' Kennels, Inc., 646 So.2d 1343, 1347
(Ala. 1994).
[2] Also, both Ex parte Brookwood Medical Cir. andEx parte Wal-Mart Stores relied on Ex parteWoodward Iron Co., 277 Ala. 133, 167 So.2d 702 (1964).Ex parte Woodward Iron Co., like Ex parteBrookwood Medical Center and Ex parte Wal-MartStores, also addressed an interlocutory trial-court order. Specifically, in Ex parte Woodward Iron Co., the issue was whether the trial court erred in allowing the substitution of one plaintiff for another. The controlling principle and the holding in Ex parte Woodward Iron Co. were stated as follows:
 "`Where the motion to vacate the original decree is granted and a new trial is ordered, or the original cause is in any wise reinstated for further proceedings, the correct method of review is by mandamus.' Here, the original cause was reinstated for further proceedings by the allowance of a new party plaintiff, so the correct method of review is by mandamus."
277 Ala. at 136, 167 So.2d at 704 (quoting Griffin v.Proctor, 244 Ala. 537, 541, 14 So.2d 116, 118 (1943)). In the present case, in contrast, the trial-court order at issue decided the merits of the only remaining, unresolved claim by the plaintiff.
[3] In the circuit court, Davis also argued that the cumulative effect of job-related stress over the period from 1991 to September 20, 1996, caused or contributed to the heart condition for which he now seeks to recover medical benefits. The evidence does not support such a finding, at least not when measured against the applicable legal-causation standard.See, e.g., Safeco Ins. Cos. v. Blackmon, 851 So.2d 532,537 (Ala.Civ.App. 2002) (the employee must be exposed to "a risk materially in excess of that to which people not so employed are generally exposed" in their everyday lives).