THOMAS, Judge.
 

 Darrell Lawshe was employed as a foreman for Fluor Enterprises, Inc., d/b/a Fluor Signature Services (“Fluor”). On November 4, 2006, Lawshe and his crew were loading a piece of metal shaped like a “T” (“the T-bar”) onto the roof rack on a pickup truck. As the men were lifting one end of the T-bar from the ground, Lawshe became concerned that the other end of the T-bar might hit the window of the cab of the pickup truck. Lawshe crawled into the bed of the pickup truck and, using his shoulder, helped to guide and lift the T-bar onto the roof rack. At one point, according to Lawshe, he was twisting at the waist and he felt more of the weight of the T-bar settle on his shoulder; Lawshe said that, at that time, he felt a twinge in his back that he thought was a strained muscle. Lawshe testified that he and his crew completed loading the T-bar. His supervisor, Steve Kelly, arrived as the crew finished loading the T-bar, and Lawshe mentioned to him that he thought he might have “twisted” his back. Lawshe said that he and Kelly discussed whether it seemed serious enough to go to the first-aid station, and Lawshe said that he told Kelly that he did not think it was very serious and that he thought it would improve over the next few days; Lawshe said that he told Kelly that he would report the injury if it got worse. Kelly’s recollection of the conversation was very similar; he agreed that strained backs and pulled muscles are often not reported as injuries or treated at the first-aid station because, he said, most times they resolve over a few days with no treatment.
 

 The accident occurred on a Saturday. Although he felt worse on Monday than he did on Saturday, Lawshe reported to work. He said that he felt that the back pain would resolve in a few more days, so he did not report the injury at that time. Lawshe reported to work on Tuesday as well; again he did not report the injury. Lawshe remained at home on Wednesday; he testified that the pain was worse and that he felt he needed to rest his back more. Lawshe worked on Thursday, but on Friday morning, November 10, 2007, Lawshe went to his family physician’s office instead of reporting to work. Dr. Raymond Landreneau, Lawshe’s family physician, was not at the office that day, so his partner, Dr. Thomas Irving, examined Lawshe; Lawshe was prescribed pain medication and a muscle relaxer. Lawshe missed work on Saturday, and, on Monday, November 13, he reported the November 4 injury to the safety office when he arrived at work.
 

 According to Lawshe, Fluor policy required that he submit to a drug test, which he did. Lawshe also said he was told that he would have to remain off of work without pay until the results of the drug test were obtained; Lawshe said he was told that, if the drug test were negative for unlawful substances, he would be paid for 8-hour shifts for each of those days. Fluor referred Lawshe to Dr. John A. Hamilton, who opined that Lawshe had suffered a back strain. On Thursday, November 16, Lawshe said, he was informed by the superintendent that he was fired and that his claim for the November 4 injury was to be turned over to Fluor’s workers’ compensation carrier.
 

 Lawshe testified that, during the next six weeks, he attempted to discuss his workers’ compensation claim with representatives of the carrier; however, he said, about six weeks after he reported his injury, the carrier finally informed him that his workers’ compensation claim had been denied. At that time, Lawshe sought the
 
 *99
 
 services of an attorney, who referred him to Dr. Robert Zarzour, an orthopedic surgeon, for a medical opinion on Lawshe’s back condition. Lawshe had seen his own physicians, Dr. Irving and Dr. Landre-neau, between November 10, 2006, and February 2, 2007, when he first saw Dr. Zarzour.
 

 In March 2007, Lawshe sued Fluor, seeking workers’ compensation benefits for the November 4 injury. He also moved for an order requiring Fluor to provide medical benefits and temporary-total-disability benefits. Fluor objected to such an order, noting in its response to Lawshe’s motion that it had denied benefits to Lawshe based on its opinion that the injury to his back was not compensable and that the trial court would be required to conduct an evidentiary hearing on the compensability issue before ordering Fluor to be responsible for either medical benefits or temporary-total-disability benefits.
 
 See Ex parte Publix Super Markets,
 
 963 So.2d 654 (Ala.Civ.App.2007). The trial court held an evidentiary hearing on the compensability issue on November 8, 2007.
 

 The trial court’s judgment determined that Lawshe’s November 4, 2006, injury was compensable. Based on that determination, the trial court ordered that Fluor pay temporary-total-disability benefits commencing from November 13, 2006, and continuing until further order of the court. The court further ordered that “Fluor shall provide Lawshe, at its expense, and until further Order of this court, medical treatment provided, ordered, or prescribed, by Dr. Robert Zarzour.” From this aspect of the trial court’s judgment, Fluor filed a petition for the writ of mandamus. Because the judgment determining compensability and awarding both medical benefits and temporary-total-disability benefits was final for purposes of appeal,
 
 see BE & K, Inc. v. Weaver,
 
 743 So.2d 476, 480 (Ala.Civ.App.1999), we elected to treat the petition as an appeal.
 
 Wix Corp. v. Davis,
 
 945 So.2d 1040, 1045 (Ala.Civ.App.2005) (treating a petition for the writ of mandamus as an appeal because the order under review was not interlocutory and was instead a final and appealable judgment).
 

 Fluor makes two arguments regarding the trial court’s order that it pay for the medical expenses Lawshe would incur for future treatment
 
 by Dr. Zarzour.
 
 First, Fluor argues that the trial court could not order that it pay for continued treatment by Dr. Zarzour because, Fluor asserts, it, as the employer, has the right in the first instance to select the physician to provide medical services to the injured employee. Secondly, Fluor argues that the trial court’s order impermissibly requires it to pay for all expenses incurred by Lawshe for all treatment provided by Dr. Zarzour without regard to a connection to Lawshe’s work-related injury or the medical necessity for and the reasonableness of such treatment.
 
 [1]
 

 Fluor is correct in asserting that the Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq., gives the employer the right to select the injured employee’s physician in the first instance.
 
 See
 
 Ala. Code 1975, § 25-5-77(a);
 
 see Ex parte Alabama Power Co.,
 
 863 So.2d 1099, 1102 (Ala.Civ.App.2003) (stating that the employer has the right “to exercise considerable control over the medical care for which it must pay, including the right to choose the employee’s physician in the first in
 
 *100
 
 stance”). If an injured employee is dissatisfied with the physician selected by the employer, he or she may request that the employer provide a panel of four physicians from which the employee may choose a treating physician. § 25-5-77(a). In general, employers are not liable to the employee for the cost of treatment provided by an unauthorized physician.
 
 See, generally, Williams v. Union Yarn Mills,
 
 709 So.2d 71 (Ala.Civ.App.1998);
 
 Combustion Eng’g, Inc. v. Walley,
 
 541 So.2d 560, 561 (Ala.Civ.App.1989). However, in those instances when the employee is justified in seeking medical treatment without prior authorization by the employer, the employer may be liable for those expenses.
 
 See, e.g., Kimberly-Clark Corp. v. Golden,
 
 486 So.2d 435, 437 (Ala.Civ.App.1986). Justifi-cátion for failing to seek prior authorization from the employer includes:
 

 “ ‘(1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee.’ ”
 

 Kimberly-Clark Corp.,
 
 486 So.2d at 437 (quoting
 
 United States v. Bear Bros., Inc.,
 
 355 So.2d 1133, 1138 n. 2 (Ala.Civ.App.1978)). Fluor does not dispute that it is liable for Dr. Zarzour’s treatment of Lawshe during the period between the denial of Lawshe’s compensation claim and the trial court’s determination that Lawshe’s injury was indeed compensable. Instead, Fluor asserts that, at the time the injury was determined to be compensable, its right to select a physician to provide treatment to Lawshe attached and that the trial court’s order has impermissibly usurped that right by permitting Lawshe to choose his own physician. Lawshe counters with the argument that Fluor lost its right to choose the authorized treating physician by failing to exercise that right when it denied the compensability of Lawshe’s injury. Neither party has directed this court to a case that directly answers the question whether an employer who contests compensability and refuses to provide medical treatment on that basis may require an injured employee to change physicians to an employer-selected physician after
 
 the
 
 employee succeeds in proving that the injury is compensable.
 

 Lawshe bases his argument on the following statement in 5 Lex K. Larson,
 
 Larson's Workers’ Compensation Law
 
 § 94.02[4][e] (Nov.2005):
 

 “Moreover, if the employee has once justifiably engaged a doctor on his or her own initiative, a belated attempt by the employer to offer a doctor chosen by the employer will not cut off the right of the employee to continue with the employee’s doctor. In a California case, claimant was forced to procure his own medical treatment, and was awarded reimbursement for his expense. The employer then tendered the services of its own doctor, who had treated claimant for a period prior to the refusal. The court held that in the absence of a change in condition or evidence that the treatment was defective or additional treatment is needed the claimant was entitled to continue the use of his own doctor.”
 

 (Footnote omitted.) Lawshe further directs us to
 
 Sunnyland Foods, Inc. v. Catrett,
 
 395 So.2d 1005 (Ala.Civ.App.1980), which he says supports the conclusion that, once lost, control over an injured employee’s medical care is not automatically regained by an employer when the employer is ordered to pay for the cost of the medical treatment.
 

 
 *101
 
 In
 
 Catrett,
 
 this court was faced with the question whether, after authorizing an injured employee to choose his own physician, the employer, Sunnyland Foods, could contend both that the injured employee was not permitted to choose his own physician and that the injured employee unreasonably refused treatment from its doctors such that Sunnyland Foods could suspend payment of workmen’s compensation benefits.
 
 Catrett,
 
 395 So.2d at 1008. The evidence indicated that an adjuster for Sunnyland Foods’ insurance carrier had told the injured employee that he could consult with any doctor he chose.
 
 Id.
 
 Based on that fact, the trial court had concluded that the injured employee was permitted to select his own authorized physician, and this court affirmed its judgment ordering Sunnyland Foods to pay for the treatment by the employee’s chosen physician.
 
 Id.
 
 In affirming, we stated, “[b]y authorizing [the injured employee] to seek treatment from a doctor of his choice, Sunnyland [Foods]
 
 effectively transferred its authority
 
 to choose the doctor to [the injured employee].”
 
 Id.
 
 (footnote omitted; emphasis added). In addition, we commented that, “Sunnyland [Foods] cannot contend that [the injured employee] unreasonably refused treatment from doctors later suggested by it when [the injured employee] was being treated by a doctor with whom he was fully satisfied ....”
 
 Id.
 
 Finally, we stated: “[the employee] may not be forced to leave the care of a doctor with whom he is satisfied even though the employer, ie.[,] Sunnyland [Foods], might have become dissatisfied with that particular doctor.”
 
 Id.
 
 at 1009. In essence, this court held that, once transferred to the injured employee, the right to select a physician does not revert back to the employer while the injured employee remains satisfied with his treating physician.
 

 However, Fluor maintains that
 
 Continental Grain Co. v. Maier,
 
 842 So.2d 670 (Ala.Civ.App.2001), compels an opposite conclusion. In
 
 Maier,
 
 before the trial of her workers’ compensation claim, the injured employee had seen several physicians, one of whom recommended surgery for her condition.
 
 Maier,
 
 842 So.2d at 671. She received a judgment in her favor on the issue of compensability in February 1999.
 
 Id.
 
 At that time, the injured employee requested that the employer designate an authorized treating physician.
 
 Id.
 
 When she was dissatisfied with the first authorized physician’s treatment recommendations, the injured employee asked first that she be allowed to see the physician she had seen before the trial; the employer denied that request.
 
 Id.
 
 The employee then requested a panel of four, from which the injured employee chose a second authorized treating physician.
 
 Id.
 
 The injured employee was dissatisfied with that physician’s treatment plan as well, so she asked the trial court to authorize the surgery that had been recommended by the physician that had treated her before the compensability determination.
 
 Id.
 
 The trial court ordered that the employer pay for the surgery, concluding that the employee was permitted to select her own physician because the employer had “ ‘failed through flagrant neglect or otherwise to provide [the employee] with the medical services to which she has been entitled,’ ” apparently by failing to pay for the surgery recommended by the unauthorized physician.
 
 Id.
 
 at 672.
 

 This court reversed the judgment in favor of the employee.
 
 Id.
 
 at 673. In our decision, we concluded that the employer had provided the injured employee with the necessary medical care by providing not one but two authorized physicians.
 
 Id.
 
 at 672. We disagreed with the trial court’s conclusion and determined that the first exception to requiring that the treatment
 
 *102
 
 provided an employee be authorized by the employer — that the employer had either neglected or refused to provide necessary medical care — had not been triggered.
 
 Id.
 

 Although at first glance
 
 Maier
 
 and
 
 Ca-trett
 
 appear to contradict each other, we note a rather significant factual distinction. The injured employee in
 
 Maier
 
 requested that the employer provide her with an authorized treating physician after she secured a judgment finding her injury com-pensable. With that request, the injured employee returned to the employer the authority to make the selection of a treating physician, thus committing herself to abide by § 25-5-77(a). In
 
 Catrett,
 
 however, the injured employee was authorized to select his own physician and was satisfied with that physician; the employee could not be forced to change physicians simply to assuage the employer’s later desire to assert control over the injured employee’s medical care. This conclusion is consistent with the balancing of the competing interests present when considering the provision of medical care to an injured employee by his or her employer.
 

 As we explained in
 
 City of Auburn v. Brown,
 
 638 So.2d 1339, 1340-41 (Ala.Civ.App.1993), the legislature was balancing competing interests when it drafted the provision in the Workers’ Compensation Act pertaining to the choice of physicians.
 

 “In determining who the treating physician will be in a workmen’s compensation case, the drafters of the applicable Alabama statute took into consideration two desirable values. Professor Larson describes the values as follows:
 

 “ ‘The first is the value of allowing an employee, as far as possible, to choose his own doctor. This value stems from the confidential nature of the doctor-patient relation, from the desirability of the patient’s trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury. If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process.’
 

 “2 A. Larson,
 
 The Law of Workmen’s Compensation
 
 § 61.12(b), at 10-790 (1989).”
 

 Brown,
 
 638 So.2d at 1340-41.
 

 We have recognized that a positive doctor-patient relationship plays a role in the successful treatment of work-related injuries.
 
 Brown,
 
 638 So.2d at 1340 (quoting 2 A. Larson,
 
 The Law of Workmen’s Compensation
 
 § 61.12(b), at 10-790 (1989)) (recognizing both “ ‘the confidential nature of the doctor-patient relation’ ” and “ ‘the desirability of the patient’s trusting the doctor’ ”);
 
 Catrett,
 
 395 So.2d at 1009 (holding that the injured employee could not be forced to leave the care of his physician when he was satisfied with the treatment he received from that physician);
 
 see also
 
 2 Terry A. Moore,
 
 Alabama Workers’ Compensation
 
 § 17:12 (1998) (“[T]he employee, as the injured party, must be satisfied with the health care provider and the diagnosis and treatment of the injury. If ... the employee is ... dissatisfied with the doctor-patient relationship, the healing process will be delayed.”). With this in mind, we find the factual distinction between
 
 Catrett
 
 and this case regarding the basis for permitting the injured employee to seek treatment from
 
 *103
 
 an unauthorized physician to be a difference without distinction. Although the injured employee in
 
 Catrett
 
 was told that he could seek treatment from a physician of his choosing, thus transferring the employer’s right to select the physician to the injured employee, an injured employee whose employer denies the compensability of the employee’s injury is permitted to seek treatment from an unauthorized physician for that injury because of the employer’s refusal to provide the necessary treatment, thus rendering the treatment provided authorized as well.
 
 Combustion Eng’g, Inc.,
 
 541 So.2d at 561;
 
 Kimberly-Clark Corp.,
 
 486 So.2d at 437. The employer’s failure to render the necessary treatment transfers its right to select the treating physician to the employee just like authorizing the injured employee to select his own physician does. Once the employee is entitled to and elects to choose his or her own physician, treatment by that physician can continue as long as the employee is satisfied with the treatment, subject to the employer’s right to challenge medical expenses or treatments it believes are not reasonably necessary or inappropriate under § 25-5-77(a) or (i).
 
 [2]
 

 Lawshe was permitted to select his own physician in the face of Fluor’s denying the compensability of Lawshe’s injury and its declining to provide him medical treatment for it.
 
 Combustion Eng’g, Inc.,
 
 541 So.2d at 561;
 
 Kimberly-Clark Corp.,
 
 486 So.2d at 437. Although we understand both the desire and the original right of Fluor to control Lawshe’s medical treatment, we conclude that Lawshe is permitted to continue to use Dr. Zarzour for the treatment of his work-related injury, subject to Fluor’s right to object to any of Dr. Zarzour’s treatment that it finds unnecessary or unreasonable. Lawshe has forged a doctor-patient relationship with Dr. Zarzour, Lawshe is satisfied with Dr. Zarzour’s treatment, and the record reveals no reason to discontinue the doctor-patient relationship.
 

 Fluor further argues that the trial court’s judgment, as written, requires it to pay for
 
 any and all
 
 medical treatment provided to Lawshe by Dr. Zarzour. This, argues Fluor, is in violation of § 25-5-77(a), which requires an employer to pay for medical treatment that is “reasonably necessary” and results from the work-related injury. We agree with Fluor that the statute restricts its liability and that, as written, the trial court’s order could be read to expose Fluor to liability for medical treatment that is not “reasonably nec
 
 *104
 
 essary” or that is unrelated to Lawshe’s work-related injury. Although we do not believe that the trial court intended to flout the statute by failing to include limiting language, and because Lawshe has stated in his brief that he will agree to amend the judgment to include the necessary limiting language, we reverse the judgment of the trial court insofar as it fails to limit Fluor’s liability for medical treatment as required by § 25-5-77(a), and we instruct the court, on remand, to insert appropriate limiting language as agreed upon by the parties.
 

 AFFIRMED IN PAlRT; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Pursuant to the Workers' Compensation Act, Ala.Code 1975, § 25-5-1 et seq., the employer has the right to contest the reasonableness or the necessity of the medical treatment provided to an injured employee under Ala. Code 1975, § 25-5-77(a) or (i) (providing for ombudsman review of challenged medical services).
 

 [2]
 

 . This conclusion is supported by the above-mentioned quote from
 
 Larson’s Worlcers’ Compensation Law,
 
 which states that an employee who has "justifiably engaged” his or her own physician has a right to continue treatment with that physician. Larson,
 
 supra.
 
 According to that treatise, unless proof of other considerations like a change in the employee’s condition or evidence that the treatment rendered is defective or incomplete militate in favor of a change of physician, the employer should not be permitted to force a change of physician on the employee.
 
 Id.
 

 The treatise relies on a case from California,
 
 Zeeb v. Workmen’s Compensation Appeals Board,
 
 67 Cal.2d 496, 502, 432 P.2d 361, 365, 62 Cal.Rptr. 753, 757 (1967), in which the California Supreme Court held:
 

 "Where, as in the present case, the employer has refused treatment causing the employee to procure his own medical treatment, medical considerations and adherence to the purposes of [a workers’ compensation provision of the California Labor Codel would dictate that a doctor-patient relationship which will inspire confidence in the patient is an ingredient aiding in the success of the treatment, and that, once such a relationship has been established, treatment should continue with the same doctor in the absence of a change of condition or evidence that the treatment is defective or additional treatment is necessary.”