THOMAS, Judge,
dissenting.
Because I would deny the petition for the writ of mandamus, I respectfully dissent. The majority of the court has decided to grant the petition and to issue the writ because, relying on Ex parte Publix Super Markets, Inc., 963 So.2d 654 (Ala.Civ.App.2007), it believes that a compensa-bility hearing should be held in this case before Sunbelt is required to pay for Randall Paul’s surgery.
First, I believe this case is distinguishable from Ex parte Publix. In Publix, the employee sought to compel the employer to provide her with medical treatment based on the “mere allegation” that she was entitled to treatment. 963 So.2d at 661. The employer had denied the employee’s workers’ compensation claim from the outset of the litigation. Here, Sunbelt neither admitted nor denied, in its answer to Paul’s complaint, that Paul had suffered a work-related injury, but it authorized Paul to be treated by Dr. Raymond Fletcher, an orthopedic surgeon in Baldwin County, and it paid for Paul’s treatment by Dr. Fletcher. Although Sunbelt’s payment of Paul’s medical expenses cannot be construed as an admission of liability, it does indicate that Paul’s treatment was obtained with Sunbelt’s authorization. See Fluor Enters., Inc. v. Lawshe, 16 So.3d 96 (Ala.Civ.App.2009); 2 Terry A. Moore, Alabama Workers’ Compensation § 17:16 at 32 (1998):
“[I]f the employer with full knowledge that the employee is seeing a physician fails to object thereto over a substantial period of time, it may be inferred that *1147 the employer approves of the physician for purposes of the statute requiring authorization.”
Second, I believe that Sunbelt obviated the need for a compensability hearing in this case when it moved to dismiss Paul’s complaint on May 29, 2008, and admitted that it had “accepted [Paul’s] claim as com-pensable under the Workers’ Compensation laws of the State of Florida and ha[d] paid benefits accordingly.” With respect to the test for compensability, Florida law is essentially identical to Alabama law.[3] See § 440.02(19), Fla. Stat. (2006) (providing that “ ‘[i]njury’ means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.... ”) (emphasis added).
Florida courts, like Alabama courts, have held that the “arising out of’ and “in the course of’ requirements of the definition of “injury” are conjunctive, i.e., that both must be proved in order to establish compensability. See, e.g., Strother v. Morrison Cafeteria, 383 So.2d 623 (Fla.1980); Southern Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166, 1169 (Fla.1977); Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193, 195 (Fla.1972); Fidelity & Cas. Co. of New York v. Moore, 143 Fla. 103, 105, 196 So. 495, 496 (1940); and Aloff v. Neff-Harmon, Inc., 463 So.2d 291, 295 (Fla.Dist.Ct.App.1984). An early Florida Supreme Court opinion explained:
“[F]or an injury to arise out of and in the course of one’s employment, there must be some causal connection between the injury and the employment or it must have had its origin in some risk incidental to or connected with the employment or that it flowed from it as a natural consequence. Another definition widely approved is that the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.”
Fidelity & Cas. Co. of New York v. Moore, 143 Fla. at 105, 196 So. at 496.
In Moore, an automobile dealership maintained a 24-hour service for its customers and required Moore, an officer of the company and the manager of the parts department, to be available at any time. Moore left the dealership on a Sunday evening, took his wife home, and was on his way back to the dealership when his vehicle struck a tree. Moore died a few days later from the injuries he sustained in the collision. The Florida Industrial Commission awarded Moore’s widow workmen’s compensation benefits. The compensation carrier appealed to the circuit court, which affirmed the award. The *1148 Florida Supreme Court reversed the circuit court’s judgment, holding that
“[w]hen the accident which resulted in Moore’s death took place, he was on a mission purely personal to himself and wife and had no connection whatever with his employment; it did not flow from nor was it in any way incident to his employment.... [A]n employee is not covered by the Workmen’s Compensation Act if injured on a personal mission.
“.... This must be the rule, otherwise the requirement that the accident arise out of and in connection with the employment is meaningless. It is not questioned that the deceased was at the time of his death on a very laudable mission, but that does not bring it within the terms of the act. It took place on a Sunday evening when [Moore] was not responding to a business call and he was on a mission in no way connected with the business.”
143 Fla. at 106, 196 So. at 496. The court also stated:
“Much is said in the briefs of counsel about the presumption indulged in by the Workmen’s Compensation Act to the effect that in the absence of substantial evidence to the contrary, it will be presumed that the claim comes within the provision of the act, relieving the claimant of the burden of proving that the injury arose out of and in the course of the employment.
“That presumption has no application in this case. In the first place, it does not relieve against proving that the accident occurred and that it arose out of and in course of the employment. In the second place, we understand that this presumption is like all others, applicable only in the absence of evidence and that when substantial evidence of a fact is submitted, the presumption vanishes.”
143 Fla. at 106-07, 196 So. at 497. The statutory presumption referred to in Moore was found at § 440.26, Fla. Stat. (1941), which provided:
“In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—
“(1) That the claim comes within the provisions of this chapter.
“(2) That sufficient notice of such claim has been given.
“(3) That the injury was not occasioned primarily by the intoxication of the injured employee.
“(4) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.”
That presumption was applied, in the main, to fatal unwitnessed accidents. See Olsen v. Winter Park Racquet Club, 142 So.2d 5 (Fla.1962)(caretaker of tennis court found dead in chlorinating room of employer’s premises during working hours); Cone Bros. Contracting Co. v. Allbrook, 153 Fla. 829, 16 So.2d 61 (1943) (truck driver killed in collision with truck driven by co-employee); Sims Tire Serv. v. Parker, 146 Fla. 23, 200 So. 524 (1941) (employee fatally injured in automobile collision at night after leaving employer’s place of business); Fidelity & Cas. Co. v. Moore, supra. See generally .Annot., Workmen’s Compensation: Presumption or Inference that Accidental Death of Employee Arose Out of and in the Course of Employment, 120 A.L.R. 683 (1939).
Section 440.26, Fla. Stat., however, was repealed effective July 1, 1990. See 1990 Fla. Laws c. 90-201, § 26; and 1991 Fla. Laws c. 91-1, § 24. With respect to the *1149 test for compensability, Florida law is now consistent with Alabama law.
It is undisputed that Dr. Fletcher recommended surgery for Paul and opined that
“delay in surgical treatment is expected to result in pain on a day-to-day basis as well as diminished functionality over the next several months.... Denial of surgical treatment will continue to have a negative impact on this patient’s long-term outcome.”
Athough Dr. Fletcher did not explicitly state that the surgery he recommended for Paul was necessary to treat a condition caused by a work-related injury, Sunbelt has “accepted [Paul’s] claim as compensa-ble” and has paid for the treatment incident to Paul’s injury, and, our cases have held, it may not now withdraw its authorization for Dr. Fletcher to continue treating Paul.
“The purpose of the medical provisions of the [Workers’ Compensation] Act is to assure healing for the employee with physicians approved by the employer. The Sunnyland Foods [, Inc. v. Catrett, 395 So.2d 1005 (Ala.Civ.App.1980),] and City of Auburn [v. Brown, 638 So.2d 1339 (Ala.Civ.App.1993) ], cases ... indicate that the employer cannot withdraw approval or dictate treatment once a provider has been approved.”
Waffle House, Inc. v. Howard, 794 So.2d 1123, 1129-30 (Ala.Civ.App.2000).

. In Rayburn v. State, 366 So.2d 708, 709-10 (Ala.1979), the Alabama Supreme Court stated:
"All appellate courts must, through research, obtain knowledge of their own state’s legislative acts and judicial decisions in order to interpret statutes and apply the law to the facts. This is not judicial notice,' as that term is used in the law of evidence, but may be more properly characterized as judicial knowledge' gained through research. The determination of what is the forum state's law is a fundamental part of the judicial function.
"There is no justification, other than the notice requirements of Rule 44.1, [Ala. R. Civ. PJ, for treating a question of a foreign state's law any differently from a question of the laws of Alabama. Committee Comment, Rule 44.1, [Ala. R. Civ. P.]. See C. Wright & A. Miller, [Federal Practice and Procedure: Civil] § 2446 [(1971)]. Determination of foreign law, like any other question of law before an appellate court, may be resolved by reference to the foreign state's statutory and case law.”