On Application for Rehearing

THOMAS, Judge.
The opinion of September 6, 2018, is withdrawn, and the following is substituted therefor.
*1054 This is the third time that this case has been before this court. See SouthemCare, Inc. v. Cowart, 48 So.3d 682 (Ala.Giv.App. 2009); Ex parte SouthemCare, Inc. (No. 2071026, August 19, 2008), 30 So.3d 474 (Ala.Civ.App.2008) (table) (denying a petition for the writ of mandamus). In Co-wart, we determined that the trial court’s June 2008 interim judgment, which determined that Margaret Cowart’s back condition arose out of and in the course of her employment and ordered SouthemCare, Inc. (“SCI”), to be responsible for the care and treatment of that condition, was not a final judgment and was therefore not appealable. CowaH, 48 So.3d at 633. SCI sought certiorari review of our dismissal of its appeal, which review our supreme court granted; however, our supreme court ultimately quashed the writ of certiorari on May 14, 2010. Ex paHe SouthemCare, Inc., 48 So.3d 635 (Ala.2010).
The trial court held a second trial to determine Cowart’s disability on August 12, 2012, and it entered a judgment on September 6, 2012, determining that Co-wart was permanently and totally disabled. After its postjudgment motion was denied by operation of law, SCI appealed the September 6, 2012, judgment to this court.
The following facts were presented to the trial court at the November 2007 com-pensability trial. Cowart was employed by SCI as a hospice nurse in 1999. In February 2004, Cowart slipped and fell while on her way to recover patient files from a coworker; Cowart landed on her right hip and injured her back. Cowart was not able to work for four or five months as a result of her injuries; SCI paid workers’ compensation benefits to Cowart as a result of her injuries. She later returned to work performing her full duties.
In April 2005, Cowart again suffered an injury to her back while assisting a patient. Cowart explained that she was helping the patient turn onto her side and tending the patient’s wound and that when she stood up “it was like you have to stretch and everything and it was hurting really, really bad.” Cowart was again out of work for a short time, and SCI paid workers’ compensation benefits to Cowart. After first resuming work on light-duty status, Cowart later resumed her full duties.
Cowart also injured her back at a patient’s home in November 2005, when she twisted her back when she missed a step at the patient’s home. The record does not indicate that Cowart missed any work as a result of that injury, but she testified that the pain she had suffered after the 2004 fall and the April 2005 injury occurred in the same area of her back and was the same type of pain.
In January 2007, Cowart again injured herself while performing wound care on a patient. Although Cowart related that she had had assistance from three people to roll and hold the patient so that Cowart could reach the back wound, Cowart stated she had to stand and bend in an awkward way to reach and dress the wound and that when she stood up “it was like something, I said snapped. It was like electricity or something, pain just went through my left leg and into my hip and it was awful.” Cowart continued her work and saw her next patient. However, she said, she was in excruciating pain. The next morning, Cowart testified, she reported the incident to her supervisor. She said that she was out of work for a few months as a result of that incident and that she received workers’ compensation benefits while she was not working. Cowart said that, although she resumed working after her January 2007 injury when SCI determined that her injury was not work-related, she worked in constant pain. She also reported that she had had to rely on her sisters to assist her because she could not “do anything” and *1055 that she had had to rest in the evenings and on weekends to recuperate; she also commented that she had gone a month without grocery shopping because of her pain.
On the morning of June 12, 2007, Co-wart was getting ready for work. When she lifted her left leg to put on her pants, Cowart testified, she felt the same pain she had felt in January 2007, only this time, she said, the pain was even more excruciating. When Cowart telephoned her supervisor to report that she could not come into work, Cowart said, her supervisor informed her that her injury, having occurred at home, was not work-related.
In addition to Cowart’s testimony, the record contains voluminous medical records and the deposition testimony of Dr. James White III. The medical records reflect that Cowart received an MRI in 2004 and in June 2005; those MRIs were described as “unremarkable.” Cowart also underwent a myleogram in May 2006; the report from that test stated that Cowart had a “posterior disk bulge at L2-3, L3-4, and L4-5, which does not produce root sleeve cutoff or spinal stenosis,” and “mild spondylosis at C2-3 and C3-4, which does not produce spinal stenosis and no root sleeve impingement or entrapment demonstrated.” A February 2007 MRI without contrast revealed “moderate central spinal canal and bilateral recess stenosis of L2 to L4 secondary to disc bulging and osteo-prolific disease” but “[n]o evidence of herniation or acute intraspinal pathology.” Although Cowart sought and received a court order requiring SCI to pay for a myleogram and a post-myleogram CT scan, those tests were, as far as the record reveals, never conducted.
Cowart’s medical history reflects that Cowart had suffered a back strain in 1993 while working for a previous employer. She had also fallen when she was a teenager. However, despite both accidents, Co-wart was able to work for several years for SCI without incident. Cowart’s medical records also reflect that she fell in her bathtub in July 2004; Cowart testified that she did not recall that incident, and the medical records regarding that fall do not indicate that Cowart complained of back pain as a result of the incident.
The medical records also indicate that Cowart was diagnosed with fibromyalgia by Dr. Gene Watterson at least as early as 2002. Some of the medical records related to her fibromyalgia diagnosis and treatment reveal that Cowart complained of aching, stabbing, and burning pain in her lower back. However, Dr. Watterson’s notes indicate that Cowart reported lower-back pain without radiation. Dr. Watter-son’s notes indicate that in August 2002 mild degenerative disk-disease symptoms were apparent at Tll-12 and that “osteo-phytic changes are seen arising from the anterior vertebral body endplates anteriorly an L4 and L5.” Throughout Dr. Watter-son’s notes, he refers to Cowart’s fibro-myalgia as “significantly symptomatic” and notes that it had “not significantly improved.”
Cowart saw Dr. Steven Roberts in March 2004, after her February 2004 fall. His notes indicate that Cowart had previously been diagnosed with fibromyalgia, osteoporosis, and osteoarthritis. Based on his reviews of X-rays of Cowart’s lumbar spine, Dr. Roberts noted that Cowart suffered from some slight lumbar scoliosis and “some” degenerative disk disease in the upper lumbar region of her back. Dr. Roberts’s impression was that Cowart had “degenerative disk disease [in the] lumbar disk area without significant collapse.” Dr. Roberts ordered an MRI; that 2004 MRI report indicated that Cowart has “minor bulges at 2-3, 3-4, and 4-5 without any stenosis or nerve impingement.”
Dr. Perry Savage, who treated Cowart in May 2004 for continued symptoms after *1056 her February 2004 fall, indicates in his notes that Cowart’s 2004 MRI shows no stenosis, “no HNP,” “mild bulging,” and degeneration at L3^ and L4-5. Dr. Thomas Staner, who also treated Cowart after the February 2004 fall, indicates that Co-wart’s 2004 “MRI scan films” are “unremarkable for age.” He opined that Co-wart was suffering from “mechanical low back pain.”
Dr. Michael K. Morris treated Cowart in October 2004 for continued pain in her lower back. He notes that Cowart’s MRI and X-rays are “unremarkable.” Dr. Morris’s notes state that “a lot of [Cowart’s] pain can be attributed to her history of fibromyalgia.” He further noted that, “[ojbviously, this diagnosis is not work-related.”
With the exception of her February 2004 fall, each time that Cowart injured herself at work, SCI directed her to seek medical treatment at Occupational Health Center (“OHC”). The records from OHC reveal that Dr. Nathalla Elmore diagnosed Co-wart with a lumbar strain in April 2005, in November 2005, and in January 2007. Co-wart also went to OHC in June 2007; again, she was diagnosed with a lumbar strain. The June 2007 records indicate that the June 21, 2007, appointment was considered to be a follow-up visit related to Cowart’s January 2007 injury.
After her January 2007 injury, Cowart was referred to Dr. Morris Seymour for evaluation. Dr. Seymour saw Cowart only once on April 20, 2007. Cowart testified that she took her February 2007 MRI film to Dr. Seymour’s office with her. Dr. Seymour’s office note indicates, however, that he reviewed an April 15, 2007, MRI from Bioimaging of Huntsville, which the parties agree was not an MRI of Cowart’s spine. Further, in his office note, Dr. Seymour comments that, upon review of the MRI, “I cannot see any true amount of stenosis at any level.” Based on his examination and his review of an MRI, Dr. Seymour stated that Cowart’s MRI was basically unremarkable, that Cowart did have some symptoms suggestive of an L5 nerve-root irritation and that a myleogram might be useful for further diagnosis, and that he “cannot see any injury that I would delineate and attribute to her workers’] compensation event.” In Dr. Seymour’s opinion, Cowart had simply aggravated her arthritic back and that aggravation should have resolved with conservative treatment. Dr. Seymour also opined that Cowart’s stenosis, which he had indicated was not present, was not related to her on-the-job injuries.
After her June 2007 injury, Cowart sought treatment from Dr. James White. Dr. White first saw Cowart on July 11, 2007. In his deposition testimony, Dr. White said that Cowart had explained that she had first injured her back in February 2004 and that her most recent injury had occurred when she was putting on her pants at home. He said Cowart described the pain she was experiencing as “unrelenting.”
Dr. White recalled at his deposition that Cowart had brought a February 2007 MRI film to her appointment. According to Dr. White’s deposition testimony, the 2007 MRI revealed that Cowart had mild to moderate stenotic changes at L2 to L4. Dr. White also reviewed Cowart’s 2006 myleo-gram, which, he said, did not show any significant stenosis. He explained that Cowart’s central-canal stenosis would have taken months to years to develop and that it would not have developed from the June 2007 or even the January 2007 injury. Dr. White admitted, however, that he could not tell whether the process of Cowart’s steno-sis began in 1993 or in 2004. He did note, however, that Cowart’s level of stenosis changed significantly between the 2006 myleogram and the 2007 MRI.
*1057 Dr. White recommended that Cowart undergo a myleogram and a post-myleo-gram CT scan so that he could better determine what was causing her pain. He testified in his deposition that, without further testing, he could not formulate a treatment plan or determine whether Co-wart’s stenosis was severe enough to cause her symptoms. In fact, Dr. White explained: “I don’t know either if it’s just stenosis causing her symptoms. She may have a stenosis but she may also have a herniated disk beneath the stenosis. I just can’t see unless we test it further. It may be a totally separate thing.” Dr. White stated that he believed further testing was warranted because one “can’t always see [a torn disk] on an MRI because there’s less room there. It’s not as distinct. You have to do more testing to see.”
Dr. White described Cowart as having “early neurogenic claudication,” which, he explained, causes pain in the legs to develop as one walks because of the narrowing of the spinal canal. He also testified that a person with stenosis would be more susceptible to adverse symptoms from a disk injury because, he explained, the stenosis would reduce the amount of space around the nerve and, as a result, even a small disk injury could cause symptoms because the nerve would have less room to accommodate for a bulging or herniated disk. Dr. White explained that, in his opinion, the January 2007 incident at work had contributed to the need for further testing. He further explained that, although Co-wart’s back pain could be caused by fibro-myalgia, Cowart had not complained of back pain with radiation into her legs before the February 2004 fall, indicating to him that Cowart’s fibromyalgia, which existed before the February 2004 fall, was not the cause of her current back symptoms. He did admit, however, that a fibro-myalgia diagnosis was a diagnosis of exclusion and that he could not exclude other diagnoses until he had conducted further testing.
On June 21, 2007, Cowart sued SCI, seeking workers’ compensation benefits. On August 7, 2007, Cowart specifically sought an order compelling SCI to pay for the testing recommended by Dr. White. SCI responded to Cowart’s request by asserting that Cowart’s condition was not compensable and by arguing that the trial court could not compel it to be responsible for Cowart’s medical treatment without first holding an evidentiary hearing under Ex parte Publix Super Markets, Inc., 968 So.2d 654 (Ala.Civ.App.2007).
After a trial on November 18, 2007, at which Cowart testified to the above information and her medical records were introduced, the trial court entered an interim judgment concluding that Cowart’s June 2007 injury was related to her January 2007 and February 2004 work-related injuries. The trial court further determined that the testing requested was reasonable and necessary and ordered SCI to coordinate with Dr. White regarding Co-wart’s care and treatment. As explained above, SCI attempted to appeal the June 2008 interim judgment. However, this court dismissed SCI’s appeal because the June 2008 order, having determined that Cowart’s injury was work-related and that she was entitled to medical care but not having awarded Cowart workers’ compensation benefits, was not a final judgment. After SCI’s petition for the writ of certiorari was quashed, the case proceeded in the trial court.[1]
*1058 The trial court held a second trial in August 2012, at which the only witness was Eric Anderson, SCI’s vocational expert.[2] Anderson testified that he was a licensed professional counselor specializing in vocational rehabilitation. According to Anderson, he met with Cowart for an interview on June 4, 2008. In addition to interviewing Cowart, Anderson said, he administered intelligence and achievement tests to Cowart; she scored in the average range. Anderson testified that, as part of his assessment, he had considered Co-wart’s deposition testimony and medical records from Dr. Morris, Dr. Watterson, Dr. Savage, and Dr. White, among others; Anderson stated that he had also considered Dr. White’s deposition. Anderson noted that Cowart had not been assigned permanent work restrictions or any physical-disability rating by any of her physicians and that she had been released to full-duty work. Based on this information, Anderson opined that Cowart’s vocational-disability rating was zero percent; that is, Anderson explained, he concluded that Co-wart could return to her usual and customary work as a registered nurse earning the same wage. Anderson also noted that Co-wart had many years of experience as a hospice nurse and transferable skills that could lead to employment as an office nurse, which he said was classified as light work, or as a case manager or in utilization review or similar administrative positions, which he said were classified as sedentary positions.
Anderson stated that he did not formulate his opinions based on medical records; he explained that he deferred to the treating physicians to interpret medical data. He also stated that he did not consider a subject’s complaints of pain when performing a vocational evaluation. He explained that he was not qualified to evaluate pain complaints and that he deferred to the physicians’ assignment of limitations or restrictions based on pain. He admitted that pain could affect an individual’s ability to work, noting that it could interfere with concentration, the ability to remain on task, the pace of an individual’s performance, and work attendance. Anderson also admitted that an advanced-age applicant was sometimes considered negatively by employers; however, he noted that employers also considered experience as a positive when hiring older workers.
Anderson’s report indicates that Cowart reported to him in 2008 that she had the ability to do light cooking and housework. His report also indicates that she was able at that time to drive and that she had driven to Orlando, Florida, with her sister, although she had further explained that she had had to take breaks during the trip. The report further reveals that Cowart takes Ultram, a narcotic-like pain reliever, for her fibromyalgia; the only other medications that Anderson’s report indicated Cowart took was over-the-counter medications, but the report was not specific regarding whether the over-the-counter *1059 medications were to address pain or other symptoms.
On September 6, 2012, the trial court entered a judgment determining again that Cowart’s injuries were compensable and declaring that Cowart was permanently and totally disabled. SCI filed a post-judgment motion, which was denied by operation of law. SCI then timely appealed.
Our review of this case is governed by the Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq., which states, in pertinent part: “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala. Code 1975, § 25-5-81 (e)(2). Therefore, this court “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). Further, the trial court’s finding of fact is supported by substantial evidence if it is “supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing Ala. Code 1975, § 12-21-12(d)). Our review of legal issues is without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(1); see also Ex parte Trinity Indus., 680 So.2d at 268.
On appeal, SCI first argues that the trial court’s determination that Cowart’s injury was compensable was not supported by substantial evidence; specifically, SCI challenges whether Cowart established medical causation of her back condition. SCI also argues that the trial court erred by ordering SCI to provide medical treatment to Cowart without regard to whether such treatment is reasonably necessary and related to the work-related injury. Finally, SCI challenges the trial court’s conclusion that Cowart is permanently and totally disabled.
SCI’s argument regarding the compensability of Cowart’s back condition is based on its contention that Cowart failed to present substantial evidence of medical causation. According to SCI, the evidence before the trial court established that Cowart had a long history of back pain associated with osteoarthritis, degenerative disk disease, and fibromyalgia, that she had suffered an earlier back injury in 1993 and had fallen in her bathtub in July 2004, and that the physicians who had treated Cowart had consistently indicated that Cowart’s complaints of pain were associated with her fibromyalgia or her degenerative disk disease.
“ ‘[F]or an injury to be compensable under the Workers’ Compensation Act, the employee must establish both legal and medical causation.’ Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993). ‘Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.’ Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ. App.1989).”
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003). As our supreme court further stated in Ex parte Price, 555 So.2d 1060,1063 (Ala.1989), “lay testimony may combine with medical testimony to supply th[e] requisite proof [of medical causation]; and that the medical testimony, when viewed in light of lay evidence, may amply support the medical causation element without the expert witness’s employing any requisite language.”
*1060 See also Swift Lumber, Inc. v. Ramer, 875 So.2d 1200,1203-04 (AIa.Civ.App.2003).
To support its first argument SCI relies primarily upon Ex parte Southern Energy Homes, 873 So.2d at 1123, in which our supreme court reversed this court’s affirmance of a trial court’s determination that an employee’s back injury was compensable and that she was permanently and totally disabled. The employer had argued that the employee had failed to produce substantial evidence of medical causation; our supreme court commented that “[n]one of the doctors who treated [the employee] stated with any degree of certainty that [the employee’s] back condition was due to the alleged workplace injury.” Ex parte Southern Energy Homes, 873 So.2d at 1122. As the supreme court explained, expert medical testimony is not always required to establish medical causation; however, an employee’s testimony, while not always insufficient alone to establish medical causation, cannot establish medical causation when “the evidence as a whole weighs heavily against finding the [employee’s] testimony alone to be substantial evidence of medical causation.” Id. at 1122. As our supreme court further explained:
“In Ex parte Price, 555 So.2d 1060, 1061 (Ala.1989), this Court held that expert medical testimony is not required to prove medical causation by substantial evidence. Thus, it was not necessary for [the employee] to present testimony from a medical expert tying her injury to her workplace accident. However, the Court also stated in Price that ‘[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.’ Price, 555 So.2d at 1063 (citing Odell v. Myers, 52 AlaApp. 558, 295 So.2d 413 (1974)) (emphasis omitted; emphasis added).”
Id. at 1121-22. According to the court, in order to amount to substantial evidence of medical causation, the tendency of all the evidence must establish more than a mere possibility that the employee’s injury was caused by the workplace accident. Id.
The employee in Ex parte Southern Energy Homes had testified
“concerning the timing and nature of her injuries as well as the extensive treatment she sought for her pain. [She] stated that her supervisor knew about the April 1996 injury as soon as it happened, but she admitted that she never completed the paperwork for a workers’ compensation claim for that injury. She contends that the only reason she continued to work after taking only one day off following the April 1996 injury was financial necessity, but she was unable to explain why [her primary-care physician] never mentioned this injury or her back pain in his notes on their visits until late January 1997. [She] testified that before her injury, she could do ‘anything I wanted to do,’ but that now she is not able to work, cannot go shopping, has difficulty driving for long periods, and, as far as household chores, can only wash clothes and cook around her house. She stated that she is in ‘severe pain.’ ”
Id. at 1120. Thus, the employee attempted to explain away the inconsistencies present in her testimony by explaining that her ability to continue working was based on the need for a paycheck; however, she could not produce an explanation for the fact that she had not reported her back pain to her physician for months. Id.
The employee in Southern Energy Homes had been examined by several physicians; however, her several physicians had not been able to testify that the em *1061 ployee’s back condition was caused by her workplace injury. Id. at 1122. The supreme court concluded that the testimony of the employee’s doctors, at best, “established a possibility that [her] back condition was caused by her alleged on-the-job injury.” Id. Based on the ‘“well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to “guess” the employer into liability,’” id. (quoting Ham-mons v. Roses Stores, Inc., 547 So.2d 888, 885 (Ala.Civ.App.1989)), our supreme court concluded that the employee’s testimony, which did not satisfactorily explain her failure to report her alleged pain to her physicians, did not amount to substantial evidence sufficient to support the trial court’s conclusion that the employee had proven medical causation of her condition. Id. at 1123.
SCI argues that the evidence regarding Cowart’s back pain, like the testimony of the employee in Southern Energy Homes, does not amount to substantial evidence sufficient to support the trial court’s conclusion that she established medical causation of her back condition. More specifically, SCI contends that, because the evidence indicated that Cowart suffered from fibromyalgia and degenerative disk disease and because several of Cowart’s physicians attributed Cowart’s back pain to either her fibromyalgia, which causes widespread pain, or her degenerative disk disease, because Cowart had complained of back pain on numerous occasions before and after her 2004 fall, and because no doctor had opined that Cowart’s back condition was, in fact, caused by a particular injury to her back attributable to one of her work-related accidents, Cowart’s testimony was insufficient to overcome the medical evidence contrary to a finding of compensability. SCI further complains that the evidence established that Cowart did not disclose all of her previous accidents that might have had an impact on her back to her various doctors, which, it contends, further weakens the evidence that might support the compensability of Cowart’s back condition. Thus, SCI says, Cowart is in the same situation as the employee in Ex parte Southern Energy Homes — unable to establish medical causation because she has but her own testimony to support her claim that her back condition was caused by accidents that occurred while she was employed by SCI in the face of medical records indicating that her condition is attributable to her fibro-myalgia or her degenerative disk disease.
Cowart sought medical treatment for back pain resulting from work-related incidents in 2007 from three doctors. She went to OHC after each work-related incident. The notes from her visit in June 2007 indicate that the visit was considered a follow-up visit for her January 2007 injury. However, Dr. Elmore, the treating physician at OHC, was not deposed, and thus there was no information regarding whether the note reflects a medical conclusion drawn by Dr. Elmore or whether it was reflective only of Cowart’s opinion that the events were related.
Cowart was evaluated by Dr. Seymour after her January 2007 injury at work; Dr. Seymour opined that Cowart’s back pain was not related to any injury to her back that she had sustained at work. As noted in its judgment, the trial court dismissed the opinion of Dr. Seymour, upon which SCI relies, because his opinion reflected that he had viewed an MRI that was not Cowart’s as a basis for his opinion. A review of the medical records of Cowart’s other physicians indicates that Dr. Watter-son and Dr. Morris traced her complaints of back pain to her fibromyalgia, that Dr. Roberts had determined that Cowart was suffering from degenerative disk disease, and that Dr. Savage had concluded that *1062 Cowart was suffering “mechanical low back pain.”
The only detailed opinion on the subject of medical causation was that given by Dr. White in his November 2007 deposition. Dr. White was not able to specifically pinpoint the cause of Cowart’s symptoms; in fact, Dr. White adamantly insisted that he required further testing to properly diagnose and treat Cowart. He could not definitively opine whether Cowart’s spinal stenosis was significant enough to cause her pain or whether the spinal stenosis on the 2007 MRI was masking a possible herniated disk that might be causing Co-wart’s symptoms. Dr. White testified that Cowart’s spinal stenosis would have developed over a significant amount of time, and also he noted that the amount of stenosis reflected on the 2007 MRI was greater than that reflected on the 2006 myleogram; however, Dr. White said that he could not determine for certain whether Cowart’s stenosis had begun to develop as a result of her fall in 2004 or as a result of her injury in 1993, before she was employed by SCI. Dr. White also refused to opine whether either of the 2007 incidents had caused Cowart’s disability. Although Dr. White did not definitively reject the suggestion that Cowart’s back pain was related to her fibromyalgia, he noted that she had not reported back pain with radiation until the February 2004 fall. SCI argues that Dr. White’s testimony, considered as a whole, was that Cowart’s symptoms “might be” work-related.
Because Dr. White was unable to testify to a reasonable degree of medical certainty that Cowart’s symptoms were caused by a work-related injury and because no other physician opined that Cowart’s back pain was related to an injury she sustained at work, we must determine whether Co-wart’s testimony, viewed in the context of all the evidence, could form the basis of the trial court’s determination that Cowart established medical causation of her back condition. Cowart testified that she had been able to perform the functions of her employment from the time she was hired until the fall in 2004. She admitted that she had suffered from fibromyalgia pain, but she testified that her fibromyalgia pain had seldom caused her to miss work. After the fall in 2004, Cowart stated, she returned to performing her full duties. Cowart also recounted several incidents of severe lower-back pain after she recovered from the February 2004 fall: two 2005 incidents and two 2007 incidents. She indicated that the pain she felt after each injury was in the same region and the same in nature as the pain she had suffered after the 2004 fall. When she explained the January 2007 injury, she described feeling that “something snapped” and a feeling like electricity through her left leg and hip; she described the pain as excruciating. Her description of the pain she felt in June 2007 was that it was the same as the pain she had felt in January 2007 but “even more excruciating.”
Cowart said that, after she was released to return to full duty by Dr. Seymour in April 2007, she worked in constant pain. She said she had tried to perform all the functions of her job, including driving long distances to see patients. However, she explained that she would come home and lie on the couch until she went to bed; she recalled having had two sleepless nights, after which she went to work. Cowart further testified that she had relied on her sisters to assist her at home because, she said, she “couldn’t do anything.” According to Cowart, she would rest and try to recuperate each evening and over the weekend so that she could manage to work despite her pain.
Cowart admitted that she had suffered an injury while working for another em *1063 ployer in 1993; she further admitted that she may not have informed her physicians of that injury. Similarly, she admitted that she had not informed her physicians of a fall she had suffered when she was approximately 16; she commented that the fall had not caused her to miss working on her family’s farm. However, as the trial court determined, neither of those incidents had affected Cowart’s ability to perform her duties for SCI from 2000 to 2004. As noted above, Cowart did not recall the July 2004 fall in her bathtub, but the medical records do not reflect that she complained of injury to her back as a result of that fall.
The trial court stated in its judgment that it found Cowart to be credible. The trial court believed Cowart’s testimony regarding her continued and progressively worsening pain, and it specifically commented that it believed that Cowart wanted to continue to work but could not because of her back condition. Cowart’s explanation of the incidents giving rise to her condition was logical. However, because the medical evidence indicates that Cowart’s back pain could be caused by fibromyalgia, degenerative disk disease, spinal stenosis that might have been developing since 2004 or 1993, a possible herniated disk that was not evidenced on her MRI films, or a combination of those potential causes, SCI argues that, at best, Cowart established by the medical evidence only the possibility that her back condition was caused by work-related incidents in 2004, 2005, and 2007. We agree with SCI that the appellate courts have often repeated that evidence that serves only to guess an employer into liability is not substantial evidence sufficient to support a compensability determination. Wal-Mart Stores, Inc. v. Orr, 29 So.3d 210, 220 (Ala.Civ.App.2009) (quoting Ex parte Southern Energy Homes, 873 So.2d at 1122, quoting in turn Hammons, 547 So.2d at 885) (“Our supreme court has stated that ‘ “[i]t is a well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to ‘guess’ the employer into liability.” ’ ”).
However, it is also well-settled that an employee who suffers from a preexisting condition, like, for example, Cowart’s degenerative disk disease, is not precluded from recovering workers’ compensation benefits merely because his or her condition existed before the work-related incident giving rise to a workers’ compensation claim. See McAbee Constr., Inc. v. Allday, 135 So.3d 968, 974 (Ala.Civ. App.2013). As we have explained:
“A worker who has a preexisting condition is not precluded from collecting workers’ compensation benefits if the employment aggravates, accelerates, or combines with, a latent disease or infirmity to produce disability. Ex parte Lems, 469 So.2d 599 (Ala.1985). A preexisting condition that did not affect the [worker’s] work performance before the disabling injury is not considered, pursuant to the Act, to be a pre-existing condition. Associated Forest Materials v. Keller, 537 So.2d 957 (Ala.Civ.App. 1988).”
Waters v. Alabama Farmers Coop., Inc., 681 So.2d 622, 623-24 (Ala.Civ.App.1996). Furthermore, “ ‘[a] trial court may infer medical causation from circumstantial evidence indicating that, before the accident, the [employee] was working normally with no disabling symptoms but that, immediately afterwards, those symptoms appeared and have persisted ever since.’ ” Allday, 135 So.3d at 974 (quoting Waters Bros. Contractors, Inc. v. Wimberley, 20 So.3d 125,134 (Ala.Civ.App.2009)).
The evidence in the present case indicates that Cowart had been performing her job responsibilities for SCI from the *1064 time she became employed until her February 2004 fall, despite her preexisting conditions. After the February 2004 fall, Cowart had periods of disability caused by recurring strain on her back. She returned to work after a period of recovery from each incident, until the incident in January 2007, when, although she returned to work, Cowart reported that she worked in constant pain, which was intensified after the June 2007 incident, after which Cowart could no longer work. The medical evidence, although certainly not unequivocally supportive of the conclusion that Cowart’s back condition resulted from her work-related accidents, does not serve to completely undermine the circumstantial evidence of medical causation presented to the trial court; Dr. White, although not able to completely reject the possibility that Cowart’s fibromyalgia might be the source of her back pain, indicated that the pain Cowart reported after her work-related accidents was different in nature than her fibromyalgia pain because it included radiating pain. Thus, based on our view of the evidence before the trial court in the light most favorable to Cowart, the trial court had before it substantial evidence to support its conclusion that Cowart’s condition combined with her preexisting conditions to produce Cowart’s disability.
SCI next argues that the trial court’s interim judgment requires it to “pay for any medical expense [Cowart] incurs due to any treatment by Dr. White” instead of requiring that it pay for treatment of the work-related injury that is reasonable and medically necessary. See Ala.Code 1975, § 25-5-77(a) (“In addition to the compensation provided in this article and Article 4 of this chapter, ... the employer, except as otherwise provided in this amendatory act, shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment, as may be obtained by the injured employee....”). Further, SCI appears to argue that the interim judgment deprives it of its right to seek utilization review of treatment it might find questionable under Ala.Code 1975, § 25-5-293(k). The interim judgment states:
“It is hereby ordered, that [SCI] immediately take steps to coordinate with the offices of [Dr. White] to authorize Dr. White to take all steps necessary for the care and treatment of [Cowart] for the injuries and/or conditions that she has suffered that have developed as a result of her injuries that occurred within the line and scope of her employment with [SCI].”
The trial court’s final judgment also addresses future medical benefits:
“It is further ordered, adjudged and decreed that [Cowart’s] right to future medical benefits shall remain in full force and effect consistent with the Workers’ Compensation Act of the State of Alabama and that [SCI] shall continue to remain liable to [Cowart] for all reasonable and necessary medical expenses incurred through her authorized treating physicianf,] which this court does find to be Dr. James White, III, or such other medical providers required for the purpose of providing medical care and treatment for [Cowart’s] job injuries.”
To the extent that the interim judgment does not clearly state that SCI’s duty to pay medical expenses incurred by Cowart is conditioned on those expenses being reasonable, SCI might have a technical point. The overall substance of the interim judgment, however, indicates that SCI is required to pay for necessary care and treatment of injuries arising from Cowart’s *1065 work-related accidents, and that language does not appear to leave SCI exposed to the duty to pay for any and all medical treatment that Cowart might undergo. Cf. Fluor Enters., Inc. v. Lawshe, 16 So.3d 96, 103-04 (Ala.Civ.App.2009) (reversing that portion of a workers’ compensation judgment stating that ‘“[the employer] shall provide [the employee], at its expense, and until further Order of this court, medical treatment provided, ordered, or prescribed, by [a particular physician,]’” 16 So.3d at 99, because it exposed the employer to liability for any and all medical expenses the employee might incur). Moreover, because the final judgment indicates clearly that SCI is responsible only for reasonable and necessary medical expenses incurred by Cowart to treat her work-related injuries and also states that Cowart’s right to future medical benefits is “consistent with the Workers’ Compensation Act,” any technical error in the interim judgment, which was subsumed by the final judgment, is of no consequence and cannot form the basis of an appeal. Furthermore, we conclude that nothing in either the interim judgment or the final judgment would serve to prevent SCI from exercising its right to utilization review. We therefore decline to reverse the trial court’s judgment on this ground.
Finally, SCI challenges the trial court’s determination that Cowart is permanently and totally disabled. As noted above, the only witness at the 2012 determination-of-disability portion of the trial was SCI’s vocational expert, Anderson, who testified that Cowart suffered no vocational disability as a result of her work-related accidents. SCI contends that the record does not contain substantial evidence from Cowart’s testimony that would support the conclusion that she is unable to perform gainful employment or that she is not a candidate for vocational rehabilitation, both of which facts the trial court specifically found.
“With regard to determining whether an employee is permanently and totally disabled, this court has stated:
“ ‘ “The test for total and permanent disability is the inability to perform one’s trade and the inability to find gainful employment.” Fuqua v. City of Fairhope, 628 So.2d 758, 759 (Ala.Civ.App.1993). See also Liberty Trousers v. King, 627 So.2d 422, 424 (Ala.Civ.App.1993). A “permanent total disability” is defined as including “any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.” § 25-5-57(a)(4)d., Ala.Code 1975; Russell v. Beech Aerospace Services, Inc., 598 So.2d 991, 992 (Ala.Civ.App. 1992).’
“Alabama Catfish, Inc. v. James, 669 So.2d 917, 918 (Ala.Civ.App.1995). See also Boyd Bros. Transp., Inc. v. Asmus, 540 So.2d 757, 759 (Ala.Civ.App.1988) (stating that § 25-5-57(a)(4)d., Ala.Code 1975, ‘requires that the employee be unable to perform his trade or unable to obtain reasonably gainful employment’).”
CVS Carp. v. Smith, 981 So.2d 1128, 1136 (Ala.Civ.App.2007).
Cowart’s testimony at the November 2007 compensability trial was not aimed at establishing her disability. She did testify that she had worked in constant pain from the time she returned to work in April 2007 to the day she stepped into her pants and further injured her back on June 12, 2007. She said that between April 2007 and June 2007 she had relied on her sisters for assistance because she “couldn’t do anything” and said that she rested in the evenings and on weekends. Cowart testified, however, that she had performed her job, which included patient *1066 care and, at times, driving significant distances, despite her pain. Cowart never testified regarding what medications she might have taken for her back pain, and Anderson’s June 2008 report indicates only that she took Ultram for fibromyalgia pain and vaguely referenced over-the-counter medication use without specifying the reason underlying that use. Cowart did not specifically testify to what extent her activities were limited, other than to state that she had required the assistance of her sisters and that she had once gone one month without shopping for groceries after returning to work in April 2007; Anderson’s June 2008 report indicates that Cowart performed light cooking and housekeeping duties regularly and that she had driven with her sister to Florida. Anderson’s June 2008 report also indicated that Cowart had trouble sleeping; Cowart commented at the November 2007 trial that she had had two sleepless nights between April 2007 and June 2007. Anderson opined that Cowart could return to some sort of nursing-related employment, including administrative positions in case management or utilization review, which are classified as sedentary positions. Excerpts from Cowart’s November 2011 deposition attached to SCI’s posttrial brief contained Cowart’s testimony that she did not think she could perform light-duty work; however, as SCI points out, those excerpts were not admitted as an exhibit at trial and were not before the trial court as evidence of Cowart’s disability. Although a trial court has discretion to reopen the evidence after trial, see Rikard v. Lile, 622 So.2d 413 (Ala.Civ.App.1993), the record does not reflect that either SCI or Cowart requested that the trial court reopen the evidence or that the trial court relied on the 2011 deposition excerpts in making the factual findings contained in its judgment, which contained references to the portion of the record upon which the trial court relied in making each finding.
In any event, Cowart’s mere statement that she could not perform light-duty work was a conclusory statement, and the excerpts provide no evidence concerning Co-wart’s physical limitations, pain, or disability.
We agree with SCI that the record does not contain substantial evidence that Co-wart could not perform her trade or be retrained for gainful employment. Co-wart’s testimony indicated that she had been able to perform the duties of her employment despite her pain. She also testified that she desired to return to work, which fact the trial court specifically pointed out in its judgment. Anderson’s testimony indicated that Cowart had transferable skills and that she could return to work in an office nursing position or an administrative position like case manager, which positions would not require lifting patients. Without more specific evidence indicating that Cowart would be unable to perform the duties required of her position or be trained for another nursing-related position like those mentioned by Anderson, we cannot conclude that the trial court’s determination that Cowart is permanently and totally disabled is supported by substantial evidence. We therefore reverse that portion of the trial court’s September 2012 judgment determining that Cowart is permanently and totally disabled, and we remand this cause to the trial court for it to reconsider the evidence presented and determine Cowart’s level of disability.
APPLICATION GRANTED; OPINION OF SEPTEMBER 6, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in part and concurs in the result in part, with writing.

. Cowart filed a separate action in 2009, in which she claimed that she had been discharged from her employment solely because she had sought workers’ compensation benefits in violation of Ala.Code 1975, § 25-5-11.1. She also amended her original complaint in this action to assert a claim of retaliatory discharge. The separate action was *1058 consolidated with this action, but the retaliatory-discharge claim was later severed and was ultimately settled by the parties.

. Cowart admitted several exhibits into evidence, including, over SCI’s objection, an exhibit reflecting her Social Security disability determination. The trial court, however, stated in its judgment that it did not consider the disability determination in its decision on the extent of Cowart's disability. Thus, insofar as SCI argues on appeal that the trial court erred in admitting that exhibit, we conclude that any error the trial court may have committed was harmless error because it did not cause substantial injury to the rights of SCI. See Rule 45, Ala. R.App. P. We further note that we have not considered that evidence in evaluating SCI’s appeal of the trial court’s determination that Cowart was permanently and totally disabled.