THOMAS, Judge.
Laura Wyatt ("the employee") was employed by Baptist Health System, Inc. ("the employer"), as a patient-care technician at Shelby Baptist Medical Center ("the medical center"). As a patient-care technician, the employee was responsible for various patient-care tasks, including activities like taking vital signs and changing bed linens. On November 28, 2015, the employee was carrying a plastic bag filled with soiled bed linens and towels to what she referred to as the "soiled utility room." When she lifted the bag and twisted to place it on the top of the already full linen cart, the employee felt a sharp pain in her back followed by a burning sensation and pain down her legs into her toes.
The employee, using a handrail in the hallway for support, walked to a nearby chair and sat down to see if the pain would subside. The charge nurse noticed her and questioned whether she could get up and walk. With the charge nurse's assistance, the employee stood up, but she could not lift her feet to walk; instead, she had to shuffle her feet. The charge nurse assisted her back into the chair, and, ultimately, the employee was transported to the emergency room of the medical center. By the time she reached the emergency room, she was unable to move from the waist down. Later, she lost feeling in her lower extremities and was unable to urinate.
The employee was admitted that same day into the medical center, where she stayed for approximately 10 days before being transferred to the University of Alabama *842 at Birmingham ("UAB") hospital. After a four-day stay at UAB hospital, the employee concluded her convalescence at an inpatient physical-therapy program at Spain Rehabilitation Center. She was released from the Spain Rehabilitation Center on January 16, 2016. The employee was diagnosed with transverse myelitis and still suffers from weakness in her legs, trouble with walking and with balance, and issues with her bladder and bowels.
In December 2015, the employee sued the employer in the Jefferson Circuit Court, seeking benefits under the Alabama Workers' Compensation Act, codified at Ala. Code 1975, § 25-5-1 et seq. The employer moved for a change of venue, which the Jefferson Circuit Court denied, and the employer filed a petition for the writ of mandamus in this court. We granted the petition and issued the writ directing the Jefferson Circuit Court to transfer the employee's action to the Shelby Circuit Court ("the trial court"). See Ex parte Baptist Health System, Inc., 210 So.3d 618 (Ala. Civ. App 2016). After a trial conducted on October 28, 2016, the trial court entered a judgment in favor of the employer, concluding that the employee had failed to prove that her condition had resulted from a work-related accident. In its judgment, the trial court explained that it had found the testimony of Dr. Gordon Kirschberg and Dr. Diane Counce "more well-reasoned, medically sound, and persuasive than the testimony offered by" Dr. William Meador. The employee timely appealed.
Our review of this case is governed by the Workers' Compensation Act, which states, in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala. Civ. App. 1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala. 1996). Further, the trial court's finding of fact is supported by substantial evidence if it is "supported by 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), and citing Ala. Code 1975, § 12-21-12(d) ). Our review of legal issues is without a presumption of correctness. Ala. Code 1975, § 25-5-81(e)(1) ; see also Ex parte Trinity Indus., 680 So.2d at 268.
The employee and Dr. Counce testified at the October 2016 trial.[1] The employee's medical records and the deposition testimony of Dr. Meador and Dr. Kirschberg were admitted into evidence. Other documentary evidence, including a surveillance recording and photographs depicting soiled-linen bags and a linen cart like those used at the medical center, were also admitted into evidence.
The employee testified to the facts recounted above, which were largely undisputed. She explained that she had suffered pain when attempting to toss the soiled-linen bag into the linen cart, that she began to suffer weakness and ultimately paralysis in her lower extremities, and that she became unable to urinate. She admitted having suffered previous back injuries at work, all of which, she said, had resolved and had not caused her any continued problems.
*843 The employee explained that, after her discharge from the Spain Rehabilitation Center, she was still confined to a wheelchair but that through physical therapy she had advanced to using a walker and then a cane to assist her with walking. She testified that she wears a device called a "toe-off" or "AFO" that, she said, prevents her from dragging her feet. The employee also testified that she had been prescribed physical therapy but that she was unable to attend therapy sessions because she could not afford to pay for them.
The employee recounted that she still suffered bowel and bladder problems. She said that she had to catheterize herself, that she continued to retain urine, and that she would leak urine if she laughed or sneezed. In addition, the employee said that she also suffered bowel leakage.
Dr. Meador testified in his deposition that he had personally evaluated the employee on February 29, 2016, and on June 13, 2016. He explained that he had reviewed the employee's earlier medical records and diagnostic imaging studies, including the reports related to two magnetic resonance imaging ("MRI") scans performed in December 2015, and that he had ordered another MRI scan in May 2016. According to Dr. Meador, the MRI films and other diagnostic imaging studies were all "negative." That is, he explained that the diagnostic imaging studies had not revealed any trauma to the employee's spine or any cause of the employee's symptoms. However, Dr. Meador diagnosed the employee with transverse myelitis, which he described as "any dysfunction at an isolated level or multiple levels of the spinal cord." He testified that transverse myelitis occurs from one of four causes: a traumatic injury, an ischemic event, an infection, or inflammation.
According to Dr. Meador, approximately one quarter of patients have normal diagnostic imaging studies despite having transverse myelitis. Although Dr. Meador admitted that he could not definitively say what caused the employee's transverse myelitis, he opined that the employee likely suffered an ischemic event, or loss of blood in the spinal cord, which, he said, is also called a spinal-cord stroke. He explained that he based his conclusion on the speed at which the employee developed her symptoms, despite the fact that the diagnostic imaging studies revealed no evidence of spinal-cord stroke.
When asked whether the November 28, 2015, incident at work had caused the employee's transverse myelitis, Dr. Meador candidly admitted that he did not know the answer to that question. He testified, however, that, based on the facts as recounted by the employee and her medical records, he had concluded that the most likely cause of the employee's symptoms was that the lifting and twisting motion performed by the employee had likely impinged an artery in the lower back known as the artery of Adamkiewicz, causing a loss of blood flow and a spinal-cord stroke. He explained that he did not believe that the onset of the employee's symptoms after the work-related incident was coincidental.
Dr. Meador stated that "I think anyone who makes an unusual motion and then has some change, that it is plausible that that unusual motion led to a sudden change in their body." When questioned further about his use of the word "unusual," Dr. Meador said that the employee had informed him that the concurrent lifting and twisting motions that she had performed on November 28, 2015, were not something she normally did in her employment. However, he continued to testify that the twisting and lifting motion performed *844 by the employee "somehow contributed to what I believe to be an ischemic or stroke-like event in her spinal cord. The symptoms began immediately upon that motion."
Dr. Kirschberg also testified via deposition. He stated that he had not personally evaluated the employee. He testified that he had reviewed the employee's medical records, the employee's deposition, and Dr. Meador's deposition to arrive at his conclusions. Like Dr. Meador, Dr. Kirschberg testified that the employee has transverse myelitis, which Dr. Kirschberg described as "a very acute neurological disorder" that "usually involves the spinal cord in the thoracic area." He explained that transverse myelitis is "considered to be a demyelinating disease much like multiple sclerosis, except it involves the spinal cord."
Unlike Dr. Meador, Dr. Kirschberg explained that transverse myelitis is a "disease [that] arises de novo in the spinal cord" and that "you are not talking about a traumatic injury." He explained that any traumatic injury that would result secondarily in the similar malady he described as transfer myelopathy would have to be a "fairly major" spinal-cord injury and that a twisting motion like that described by the employee would not cause transverse myelitis. Dr. Kirschberg noted that the employee's diagnostic imaging studies did not reveal a compression, a contusion, a stroke, or other injury to the spinal cord.
Although he indicated that the employee could have suffered a spinal-cord stroke resulting in her symptoms, Dr. Kirschberg testified that it was unlikely because such strokes are "very rare" and are "not caused by twisting and turning." Instead, he said, spinal-cord strokes have as their cause the same causes that lead to a typical stoke, including atherosclerotic cardiovascular disease and arteritis, neither of which were indicated on the diagnostic imaging studies or other diagnostic testing, including an angiogram and an arteriogram, that had been performed on the employee. Dr. Kirschberg opined that the employee's actions at work on November 28, 2015, did not cause the employee's transverse myelitis.
Dr. Counce testified at the trial. Like Dr. Kirschberg, Dr. Counce testified that she had performed a record review in order to give her opinion on the employee's transverse myelitis. Dr. Counce stated that she had, in fact, reviewed the employee's MRI films, and not just the reports on those films. Dr. Counce explained that transverse myelitis is a de novo disease of the spinal cord that causes inflammation. She stated that transverse myelitis could not be caused by trauma and that it could not be caused by a person's work activities. She specifically testified that the twisting and lifting performed by the employee on November 28, 2015, could not have caused her transverse myelitis because that movement was a very typical movement and because such a movement does not apply enough force to the spinal cord to cause an injury to the spinal cord. Like Dr. Kirschberg, Dr. Counce said that the employee's diagnostic imaging studies revealed no spinal-cord trauma.
Dr. Counce also testified that she disagreed with Dr. Meador's conclusion that the employee had suffered an impingement of the artery of Adamkiewicz, resulting in a spinal-cord stroke. She explained that certain information in the employee's medical records from doctors who treated her at the medical center or at UAB hospital indicated to her that the employee had not suffered an impingement of the artery of Adamkiewicz, which supplies blood to the thoracic portion of the spinal cord and which she referred to as the anterior spinal *845 artery.[2] She pointed out that Dr. Nasrollah Eslami had indicated in his encounter note from December 11, 2015, that the employee's "vibratory sense at the ankle is impaired." Similarly, Dr. Counce discussed a December 8, 2015, addendum note of Dr. Erik Roberson, which indicated that "vibration [was] absent at the metatarsals" or ankles. According to Dr. Counce, the employee would not have impaired vibratory sense in her ankles unless the posterior spinal artery had been affected. She further noted that Dr. Sean O'Malley had recorded a "minimal Hoffman's sign" on November 28, 2015, and that on December 11, 2015, Dr. Don McCormick had also recorded a positive Hoffman's sign on the right. According to Dr. Counce, the Hoffman's sign indicated that the cervical cord as opposed to solely the thoracic cord was involved. Dr. Counce also commented that Dr. McCormick had noted impaired proprioception, which she said also indicated that the posterior of the spinal cord had been affected. Had the employee suffered an artery stroke as a result of an impingement of the artery of Adamkiewicz, Dr. Counce stated, the employee would have suffered only anterior symptoms. Thus, Dr. Counce testified that the employee's medical records indicated that the spine had been globally affected and that something more than an impingement of the artery of Adamkiewicz had occurred.
Dr. Counce opined, based on the above-stated analysis, that the employee had not suffered an impingement of the artery of Adamkiewicz. Dr. Counce further opined that the employee's symptoms might actually be related to a severe vitamin B-12 deficiency. She explained that a vitamin B-12 deficiency could cause myelopathy, which she described as an injury to the spinal cord without inflammation. According to Dr. Counce, she had noticed that the employee's vitamin B-12 level was recorded as 231 in a medical center lab record, which was lower than the level of a patient that Dr. Counce had recently diagnosed with a vitamin B-12 deficiency based on that patient's suffering some similar symptoms to those suffered by the employee. Thus, Dr. Counce opined that the employee's transverse myelitis, if that was indeed what she had, was not caused by her employment.
On appeal, the employee raises several arguments. She first complains that the trial court failed to address whether she had established legal causation of her injuries. She next argues that the trial court incorrectly concluded that she had not proven medical causation, partly because, she contends, the trial court "erred in failing to resolve reasonable doubts in the evidence in favor of the employee as required by the Alabama Workers' Compensation Act." She also contends that the fact that she suffered previous back injuries should not prevent her from receiving compensation. Finally, the employee argues that the trial court "mischaracterized" the testimony of the employee and her treating physician, Dr. Meador, and improperly relied on that mischaracterization to determine that the employee was not entitled to compensation.
It is well settled that, under Alabama law, an employee must establish both legal causation and medical causation *846 in order to be entitled to workers' compensation benefits.
" '[F]or an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation.' Ex parte Moncrief, 627 So.2d 385, 388 (Ala. 1993). 'Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.' Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala. Civ. App. 1989)."
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala. 2003).
We will first address the employee's contention that the trial court mischaracterized her testimony and Dr. Meador's testimony. The trial court's judgment states:
"Dr. Meador's opinion is based upon the premise that the [employee] engaged in an unusual motion when she lifted and tossed the linen bag into the linen cart. The [employee's] testimony, however, was that she had lifted and tossed dirty linen bags several times every shift since she began working as a patient care tech in 2008. The [employee's] testimony that there was nothing unusual or extraordinary about her movement on November 28, 2015, undercuts Dr. Meador's theory on medical causation."
The employee contends that the trial court has mischaracterized Dr. Meador's testimony by focusing on his use of the word "unusual," which the trial court has determined means that Dr. Meador was misinformed about the employee's regular duties, which, she admits, included twisting and lifting linen bags frequently on a daily basis. Instead, the employee contends, Dr. Meador indicated that it was the awkwardness of the motion that resulted in her injury. We need not decide whether the trial court mischaracterized Dr. Meador's testimony because, based on our review of the evidence and the other findings and conclusions in the trial court's judgment, "any failure by the trial court to fully and accurately summarize the whole of the evidence does not amount to reversible error." Werner Co. v. Davidson, 986 So.2d 455, 463 (Ala. Civ. App. 2007). In the paragraph following the one quoted above, the trial court further explained that Dr. Meador's testimony was contradicted by the testimony of Dr. Kirschberg and Dr. Counce, which the trial court, as noted above, had already described as "more well-reasoned, medically sound, and persuasive." As we will explain infra, the record contains substantial evidence that supports the trial court's ultimate conclusion that the employee failed to establish medical causation. In such a situation, misstatements of the facts or mischaracterization of certain evidence is harmless error under Rule 45, Ala. R. App. P. See Werner Co., 986 So.2d at 463 ; James River Corp. v. Franklin, 840 So.2d 164, 169 (Ala. Civ. App. 2002).
Because we find the issue dispositive, we will next consider the employee's argument that the trial court erred in concluding that she had not proven medical causation. The employee argues that the trial court "incorrectly assigned greater weight to the testimony of Dr. Diane Counce and Dr. Gordon Kirschberg in reaching its conclusion" and that the trial court "abused its discretion in failing to resolve all reasonable doubts in conflicting medical evidence in favor of the employee." See National Rest. Corp. v. Blevins, 611 So.2d 1096, 1098 (Ala. Civ. App. 1992) ("The fundamental beneficent policy of the Workmen's Compensation Act and its remedial nature allow liberal construction and resolution of *847 reasonable doubts in favor of the employee."), and Conley v. SCI Sys., Inc., 495 So.2d 698, 700 (Ala. Civ. App. 1986) ("Though the trial court is not bound by experts' conclusions in workmen's compensation cases, all reasonable doubt in the evidence must be resolved in favor of the employee."). The employee also relies on the principle that "a trial court may infer medical causation from circumstantial evidence consisting of the sudden appearance of an injury and symptoms immediately following a workplace trauma." Fab Arc Steel Supply, Inc. v. Dodd, 168 So.3d 1244, 1256 (Ala. Civ. App. 2015) (citing 1 Terry A. Moore, Alabama Workers' Compensation § 7:15 (2d ed. 2013)). In addition, she points out that medical causation requires proof that an employee's work-related accident was merely a contributing cause of his or her disability, not that it was the sole cause. See Mobile Airport Auth. v. Etheredge, 94 So.3d 397, 403 (Ala. Civ. App. 2012) (explaining that a work-related accident need only be a contributing cause of the injury or disability). Finally, she argues that she did not have any preexisting condition that precluded her from receiving benefits for the November 28, 2015, injury. See SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1063 (Ala. Civ. App. 2013) ("[A]n employee who suffers from a preexisting condition ... is not precluded from recovering workers' compensation benefits merely because his or her condition existed before the work-related incident giving rise to a workers' compensation claim," provided he or she could perform the duties of the employment before the incident).
The trial court determined that the employee had not proven that her transverse myelitis was caused by a work-related accident on November 28, 2015. The trial court clearly explained that it had found the testimony of Dr. Kirschberg and Dr. Counce to be "more well-reasoned, medically sound, and persuasive" than the testimony of Dr. Meador. The employee contends that "the trial court erred when it failed to consider the more cogent description of [the employee's]" injury and resulting symptoms. She also complains that the trial court "abused its discretion when it relied upon conflicting evidence and weighed this conflicting evidence in a light more favorable to the [employer]."
Based on the arguments advanced by the employee, it is clear that she had been misled by some language in several cases arising under the former workmen's compensation act, like Blevins and Conley, which are cited above. The language quote above from Conley clearly incorrectly indicates that a principle of law applicable to the construction of the workers' compensation statute-that it be liberally construed in favor of the employee-is applicable to the evaluation of the evidence presented at trial. However, it has long been the law that, "[w]hen testimony is conflicting, the weight given to that evidence is a question for the trial court." Blevins, 611 So.2d at 1097. Our supreme court explained the conflict thusly:
"It is of course the settled rule everywhere that these acts are to be liberally construed in favor of the workman; but this does not mean, as counsel seem to argue, that the rule as to the measure of proof, of the sufficiency of evidence, is different from the rule in ordinary cases. The burden is on the plaintiff to reasonably satisfy the trial court that the accident arose out of and in the course of the workman's employment, and, where there is any substantial legal evidence in support of the finding of the trial court, the judgment, whether affirmative or negative, will not be disturbed on appeal."
*848 Ex parte Coleman, 211 Ala. 248, 249, 100 So. 114, 115 (1924). This same principle is embodied in § 25-5-81(e)(2), which permits this court to reverse a finding of the trial court only when the finding is not supported by substantial evidence.
The evidence at trial was conflicting. Dr. Meador testified that the employee's transverse myelitis was caused by impingement of her artery of Adamkiewicz, which, he concluded, was caused by the twisting and lifting motion the employee made on November 28, 2015. Dr. Kirschberg and Dr. Counce disagreed with Dr. Meador's conclusions, both indicating that transverse myelitis is not caused by such an insignificant trauma as a twisting and lifting motion. In fact, Dr. Counce testified that certain of the medical records she had reviewed indicated that the employee had not suffered an impingement of the artery of Adamkiewicz and that she believed that the employee suffered from myelopathy resulting from a severe vitamin B-12 deficiency. The conflicts in the evidence were for the trial court to resolve, free from any requirement that it view the evidence in a light more favorable to either party. The trial court resolved those conflicts in favor of the employer, and we cannot reweigh the evidence. See Ex parte Hayes, 70 So.3d 1211, 1215 (Ala. 2011) ("The role of the appellate court is not to reweigh the evidence ....").
Insofar as the employee claims that the trial court erred by not inferring medical causation from the sudden appearance of her symptoms after the work-related incident on November 28, 2015, we must reject her contention. Although a trial court may use evidence of a temporal connection between a workplace incident and an employee's symptoms to support a conclusion that the employee's injuries were caused by that incident, see Fab Arc Steel Supply, 168 So.3d at 1256, a trial court is not compelled to do so. See Alamo v. PCH Hotels & Resorts, Inc., 987 So.2d 598, 605 (Ala. Civ. App. 2007) (Moore, J., concurring specially) ("Although a trial court may infer medical causation from the appearance of symptoms and the onset of disability following a work-related accident, it is not compelled to make such a finding, especially if that inference is undermined by other factors or evidence."). A trial court must consider the totality of the evidence when determining whether the employee has established medical causation, and the conflicts in the evidence relating to medical causation are for the trial court to resolve. See Goodyear Tire & Rubber Co. v. Snell, 821 So.2d 992, 997 (Ala. Civ. App. 2001).
The employee further complains that the trial court did not properly apply the principles that an employee's work-related accident is required to be merely a contributing cause of his or her disability and not the sole cause, see Mobile Airport Auth., 94 So.3d at 403, and that an employee does not have a preexisting injury for purposes of the Workers' Compensation Act if he or she is capable of performing the duties of his or her employment despite the presence of an existing injury or condition. See SouthernCare, 146 So.3d at 1063. The employer attempted to establish that the employee had suffered previous back injuries and had complained of certain similar symptoms before the November 28, 2015, incident; however, the trial court did not conclude that the employee had a preexisting injury. Instead, the trial court rejected the evidence indicating that the November 28, 2015, incident caused the employee's symptoms and accepted the evidence indicating that the twisting and lifting motions made by the employee on that date could not and did not cause or contribute to her injury. Thus, the trial court found that the November 28, 2015, *849 incident was not only not the sole cause of the employee's injury, but also that it was not a contributing cause. Based on our review of the record, we are unable to conclude that the trial court misapplied either principle.
We have rejected the employee's arguments that the trial court's determination that she failed to prove medical causation should be reversed. Because we have concluded that substantial evidence supports the trial court's conclusion that the employee did not establish medical causation, we need not address the employee's argument that the trial court erred when it failed to address legal causation. See Dollar Gen. Corp. v. Nelson, 68 So.3d 114, 119 (Ala. Civ. App. 2009) (pretermitting discussion of the issue of medical causation when the record proved that the employee had failed to establish legal causation). We therefore affirm the judgment of the trial court denying the employee workers' compensation benefits.
AFFIRMED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

Martha Cox, the employee's case manager, also testified, but her testimony is not relevant to the resolution of the issues raised on appeal.

Dr. Counce's testimony was aided by large posters of a diagram of a cross-section of the spinal cord; Dr. Counce frequently pointed to one or the other of those posters with a laser pointer without clearly stating aloud exactly what she was highlighting. We have done our best to recount her testimony accurately despite the handicap caused by the inability to know for certain what portion of the diagrams Dr. Counce directed to the attention of the trial court.